## N. HOLLEMAN v. HARWARD & HUNTER.

*Action for Damages—Husband and Wife—Husband's Right of Action for Injuries to Wife and Loss of Her Services and Companionship—Sale of Laudanum to Wife Under Protest of Husband—Liability of Seller for Consequent Injuries.*

1. A husband being entitled to the services and companionship of his wife, whoever joins with her in doing an act which deprives the husband of such rights is liable to him in damages.

2. One who, despite the protests and warnings of a husband, persistently sells laudanum or similar drugs or intoxicating liquors to the latter's wife, knowing that she buys it for use as a beverage, whereby she contracts a habit destructive to her mental and physical faculties, and causing loss to the husband of her companionship and the services pertaining to the domestic relation, is liable in damages to the husband for the injuries so sustained.

CIVIL ACTION, for damages, heard on *demurrer ore tenus* before *McIver, J.,* at February Term, 1896, of WAKE Superior Court. The demurrer was sustained, and plaintiff appealed. The nature of the action and grounds of demurrer are set out in the opinion of Associate Justice MONTGOMERY.

*Messrs. Argo & Snow,* for plaintiff (appellant).
*Messrs. Battle & Mordecai* and *H. E. Norris,* for defendants.

MONTGOMERY, J.: This action was brought to recover of the defendants damages for injuries alleged to have been sustained by the plaintiff in consequence of the defendants having sold laudanum to his wife, the defendants being druggists and knowing that the plaintiff's wife was using

HOLLEMAN *v.* HARWARD.

the same in large quantities, and as a beverage, to the injury of her health.   A demurrer *ore tenus*, on the ground that the complaint did not state facts sufficient to constitute a cause of action, was sustained by his Honor.   The defendants had answered, denying all the material allegations of the complaint, but for the purposes of this action, the demurrer having been entered and sustained, the matters alleged in the complaint are to be taken as true.  The complaint shows that the plaintiff's wife many years before this action was brought, while suffering from some temporary illness, was forced to take preparations of opium for relief, and from this was formed the habit of taking laudanum. The plaintiff, as soon as he discovered the habit, set to work to cure or prevent it, and so informed the defendants, who lived in the same town with him, and forbade them to sell to his wife opium in any form except upon his own order, the defendants then and before having sold her the laudanum, knowing that she was addicted to the use of it as a beverage.   It is further alleged in the complaint that notwithstanding these protests and orders to the contrary of the plaintiff, the defendants have almost daily, through a series of years, against the frequent protests and warnings of the plaintiff, sold to the plaintiff's wife large quantities of laudanum, which they knew she was using as a beverage; that the defendants knew that, at the times when they were selling the laudanum to the plaintiff's wife, she was using it as a beverage; that she was becoming and had become what is known as an opium-eater; that she was, through the use of the drug, wrecking her mind and body, and that the plaintiff was doing his utmost to prevent such use and to counteract the effects of the ruinous drug.   The plaintiff alleges in his complaint " that his wife, by reason of the use of the drug as a beverage, had become a mental and physical wreck, and almost deprived of moral sensibility,

unfitted and disqualified to attend to her household duties or to the care and nurture and direction of her children, and that by the means aforesaid, so furnished by the defendants knowingly, wilfully and unlawfully, the plaintiff has been deprived of the society of his wife, of her services in her home, and his children have suffered from neglect and want of motherly care." That the plaintiff's family consists of his wife and six children, some of them very young, and all under age. That the plaintiff himself is dependent on his daily toil for a living, and the care of his household and children is dependent upon the services and attention of his wife, and that by the sale and use of the laudanum she has become physically and mentally incapable of attending to her duties. The complaint further alleges that but for the conduct of the defendants in selling and furnishing the plaintiff's wife laudanum, the plaintiff would have been able to have counteracted the habit, which was only forming at the time the defendants began to furnish her with the said deadly drug ; and his said wife, instead of being a burden from mental and physical and moral imbecility, would have been a comfort and a helpmeet.

The question then is, Can the plaintiff, upon the facts set out in the complaint, maintain an action ? The action is a novel one. With the exception of the case of *Hoard* v. *Peck*, 66 Barb., 202, which, in its most important aspects, resembles the one before us, we have been able to find no precedent in the English Common Law Courts, or in the courts of any of our States. It does not follow, however, that, because the case is new the action cannot be maintained. If a principle upon which to base an action exists, it can be no good objection that the case is a new one. It is contended for the defendants, though, that there is no principle of the common law upon

which this action can be sustained, and that our own statutory law gives no such remedy as the plaintiff seeks in this action for the wrong done to him by the defendants; and that the novelty of the action, together with the silence of the elementary books on the subject matter of the complaint, while not conclusive, furnishes strong countenance to their contention. It is claimed for the defendants that, while in the abstract such facts as are stated in the complaint would make the parties charged guilty of a great moral wrong, there would be no legal liability incurred therefor. It was argued for the defendant that there was no legal obligation resting upon themselves not to sell the drug, as is alleged, to the plaintiff's wife, or upon the wife not to use it; that many of the ancient restrictions upon the rights of married women had been repealed by recent legislation, or modified by a more liberal judicial construction; that a married woman was ordinarily free to go where she would, and that the husband could not arbitrarily deprive her of her liberty, nor use violence against her under any circumstances, except in self-defense; and that, if he could not restrain her locomotion and her will, he could not prevent her from buying the drug and using it; that the wife's duty to honor and obey her husband, to give to their children motherly care, to render all proper service in the household, and to give him her companionship and love, was a moral duty, but that they could not be enforced by any power of the law if the wife refused to discharge them. But, notwithstanding the claim of the defendants, we think this action rests upon a principle, a principle not new, but one sound and consistent. The principle is this:

" Whoever does an injury to another is liable in damages to the extent of that injury. It matters not whether the injury is to the property, or the rights, or the reputa-

tion of another." STORY, J., in *Dexter* v. *Spear*, 4 Mason, 115. And also in the third book of Blackstone's Commentaries, Chapter 8, p. 123, it is written : " Wherever the common law gives a right or prohibits an injury, it also gives a remedy by action." A married woman still owes to her husband, notwithstanding her greatly improved legal status, the duty of companionship and of rendering all such services in his home as her relations of wife and mother require of her. The husband, as a matter of law, is entitled to her time, her wages, her earnings and the product of her labor, skill and industry. He may contract to furnish her services to others, and may sue for them, as for their loss, in his own name. And it seems to be a most reasonable proposition of law that whoever wilfully joins with a married woman in doing an act which deprives her husband of her services and of her companionship is liable to the husband in damages for his conduct. And the defendants owed the plaintiff the legal duty not to sell to his wife opium in the form of large quantities of laudanum as a beverage, knowing that she was, by using them, destroying mind and body, and thereby causing loss to the husband. The defendants and the wife joined in doing acts injurious to the rights of the husband. From the facts stated in the complaint, the defendants were just as responsible as if they had forced her to take the drug, for they had their part in forming the habit in her, and continued the sale of it to her, after she had no power to control herself and resist the thirst ; and that, too, after the repeated warnings and protests of the husband.

There is no difference between the principle involved in this action and the principle upon which a husband can recover from a third person damages for assault and battery upon his wife. That assaults and batteries are made criminal offences makes no difference, the foundation of

HOLLEMAN *v.* HARWARD.

the husband's suit being not for the public offence, but for damages, compensation for the injury which he has sustained on account of the loss of his wife's services. The sale of the laudanum by the defendants to the plaintiff's wife, under the circumstances set out in the complaint, was wilful and unlawful, and the husband's injury is just as great as if his wife had been disabled from a battery committed on her, although the unlawful act is not indictable.

The defendants' counsel also insisted that the selling of laudanum is a lawful business, that it is on the same footing as the sale of spirituous liquors unrestrained by the statute. It is true that there is no statutory provision in North Carolina prohibiting the sale of laudanum as a beverage or medicine, but it does not therefore follow that a sale of it under all circumstances is lawful. As is well said in *Hoard* v. *Peck, supra,* "Its lawfulness or unlawfulness depends upon the circumstances of the sale, and the uses and purposes to which it is to be applied." It is lawful to sell laudanum as a medicine. It is also lawful to sell spirituous liquors as a beverage upon the dealer's complying with the license laws, except in the cases prohibited by statute. Certainly, no fair inference can be drawn from this that damages may not be recovered from one who knowingly and wilfully sells or gives laudanum or intoxicating liquors to a wife in such quantities as to be attended by such consequences to the wife as are set out in the complaint in this action. We have in our State, *The Code,* Section 1077, a statute which makes it unlawful to sell liquor in any quantity to a minor, (except he is a married man) and Section 1078 gives to the person injured damages therefor. But suppose we had no statute on the subject of liquor selling to minors, would the law permit with impunity a dealer or other person to sell liquor to a man's child, without his knowledge or consent, in such

quantities as to produce habitual intoxication, or to render him unfit for employment? But laudanum is well known to be a poisonous drug. As a beverage, it cannot be drunk without injury to the body, affecting the health of the physical and moral powers; and this is known to most persons of ordinary intelligence and to all druggists. The defendants knew, taking the complaint in this appeal to be true, that the plaintiff's wife did not buy the laudanum for medicine. They knew that she was buying it as a beverage; that she was violating her duty to her husband in destroying her health, and thereby rendering herself unfit as a companion for him, and to render proper service in the household. They assisted her and encouraged her, for gain, with the means of doing all this in face of his frequent protests and warnings. The habit she had formed was the direct result of the use of the drug which the defendants sold to her in such large quantities, and they knew it and persisted in it, although repeatedly warned and entreated by the husband not to do so.

His Honor erred in sustaining the demurrer. It ought to have been overruled.

Error.