(68 South. 89)

No. 20784.

Interdiction of GASQUET.

(Jan. 25, 1915. On Application for Rehearing, March 22, 1915.)

*(Syllabus by the Court.)*

1. HABEAS CORPUS &⟶92—ISSUANCE OF WRIT —PROCEEDINGS SUBSEQUENT—JURISDICTION.

Although the Constitution of this state authorizes the courts of appeal to issue the writ of habeas corpus at the instance of a person in actual custody, it does not follow that, after issuing the writ, the court may proceed to try and decide a case of which it would otherwise have no jurisdiction.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 81, 83, 87–96; Dec. Dig. &⟶92.]

2. COURTS &⟶477 — CONFLICTING JURISDICTION—COMMITMENT TO ASYLUM OF PERSON ACCUSED OF CRIME.

The court of appeal has not jurisdiction to revoke an order rendered by the criminal district court committing to the insane asylum a person who is charged with a crime and was not indicted on account of his insanity.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1260, 1260½; Dec. Dig. &⟶477.]

3. CONSTITUTIONAL LAW &⟶255 — INSANE PERSONS &⟶86 — DUE PROCESS OF LAW — COMMITMENT TO ASYLUM OF PERSON ACCUSED OF CRIME.

Section 993 of the Revised Statutes, authorizing the criminal court to commit to the insane asylum a person who has been arrested to answer for a crime and has been found not guilty on the plea of insanity or has been not indicted by the grand jury because of insanity, does not violate the article of the Constitution conferring upon the civil district court exclusive original jurisdiction of suits for interdiction; nor does the commitment, under that section of the Revised Statutes, deprive a person of his liberty without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 736–738, 740–745; Dec. Dig. &⟶255; Insane Persons, Cent. Dig. § 149; Dec. Dig. &⟶86.]

4. INSANE PERSONS &⟶30 — INTERDICTION — PERSONS LIABLE.

Not only lunatics and idiots are liable to interdiction, but all persons who, on account of an infirmity, are incapable of taking care of themselves and administering their estates.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 43, 45, 61; Dec. Dig. &⟶30.]

5. INSANE PERSONS &⟶30 — INTERDICTION — PERSONS LIABLE—"PROFLIGACY."

A sane person cannot be interdicted for profligacy, although psychologists and alienists call "profligacy" moral insanity.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 43, 45, 61; Dec. Dig. &⟶30.]

6. DRUNKARDS &⟶3—INTERDICTION—PERSONS LIABLE.

Under the provisions of the Act No. 100 of 1890, in connection with article 422 of the Civil Code, any person who is such an inebriate or habitual drunkard that he is unable to take care of himself and his estate may be interdicted and put into the custody and care of a curator, who shall have authority to place the interdict into an institution for the treatment and cure of his infirmity.

[Ed. Note.—For other cases, see Drunkards, Cent. Dig. §§ 5, 6; Dec. Dig. &⟶3.]

7. DRUNKARDS &⟶3 — INTERDICTION — "INEBRIATE"—"HABITUAL DRUNKARD."

An "inebriate" or "habitual drunkard" is a person who has acquired the habit of drinking intoxicating liquors or taking narcotic drugs to such an extent as to deprive him of reasonable self-control.

[Ed. Note.—For other cases, see Drunkards, Cent. Dig. §§ 5, 6; Dec. Dig. &⟶3.

For other definitions, see Words and Phrases, First and Second Series, Habitual Drunkard; Inebriate.]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Interdiction of Fernand Vaughan Gasquet. From a judgment of interdiction, defendant appeals. Affirmed, and rehearing refused. Removed to the Supreme Court of the United States upon a writ of error.

J. C. & Thos. Gilmore and Wm. Winans Wall, all of New Orleans, for appellant. Denegre, Leovy & Chaffe, of New Orleans, for appellees.

O'NIELL, J. The defendant has appealed from a judgment of interdiction. The suit

was filed by his two married sisters and his two uncles, who, as far as the record discloses, are his nearest relations. During the trial, the two sisters discontinued their suit, or withdrew as plaintiffs in the case, in order that their husbands might be competent witnesses. The defendant's mother had brought suit to have him interdicted, but died about a month afterwards, and the present suit was filed a few days after her death.

In their original petition in this case, as in the petition previously filed by the defendant's mother, the interdiction is prayed for on the allegation merely that, on account of his infirmities, Fernand Vaughan Gasquet is incapable of taking care of his person or of administering his property, and that it is therefore advisable and necessary that he be interdicted.

The defendant filed exceptions to the petition, that its allegations were vague, uncertain, and indefinite, and did not disclose a right or cause of action.

Thereupon the plaintiffs filed a supplemental and amended petition, alleging: That the defendant was subject to an habitual state of madness, although, at times, while under the influence of narcotic drugs, he appeared to have possession of his reason; that the grand jury had, on the 7th of June, 1912, on an indictment in which the defendant was charged with shooting with intent to murder one Isaac Brown, returned not a true bill, on account of the insanity of the defendant; that, on the petition of the district attorney, on account of the grand jury's finding that Mr. Gasquet was insane, and in accordance with the provisions of section 993 of the Revised Statutes, he was made defendant in a rule to show cause why he should not be committed to the criminal ward of the state hospital for the insane, and, after a trial had contradictorily with the defendant, he was adjudged a dangerous insane person and was committed to the asylum for the criminal insane, by a judgment of the criminal district court; that, because of a lack of accommodations for the criminal insane in the state asylum, Mr. Gasquet remained in the custody of the criminal sheriff of the parish of Orleans; that he was addicted to the abuse of alcohol and to taking narcotics; that he had a psychopathic constitution and hardening of the arteries, due to nephritis, affecting his mental faculties; and that he suffered from delusions.

In his answer, the defendant denied every allegation in the plaintiffs' petitions except the allegations referring to his prosecution for shooting Isaac Brown with intent to murder, the finding by the grand jury, and the consequent commitment of the defendant to the asylum for the criminal insane. He contends that the criminal district court had no jurisdiction or authority to render the judgment committing him to the asylum for the criminal insane. He contends that section 993 of the Revised Statutes, under authority of which he was committed to the asylum for the criminal insane, is null and of no effect because it violates the article of the Constitution vesting jurisdiction and authority to pronounce interdiction in the civil district court exclusively, and because it seeks to deprive a person of his liberty without due process of law. He admitted, in his answer, that he took small quantities of morphine for the purpose of allaying physical pain, but that this was under the direction of a competent and reputable physician, and not in such quantities as to affect his mind or render him incapable of taking care of his person or of administering his property.

[1-3] The authority under which the criminal district court committed Mr. Gasquet to the insane asylum is found in the following sections of the Revised Statutes:

"Sec. 993. Whenever any person arrested to answer for any crime or misdemeanor, before any court of this state, shall be acquitted there-

of by the jury, or shall not be indicted by the grand jury, by reason of the insanity or mental derangement of such person, and the discharge and going at large of such person shall be deemed by the court to be dangerous to the safety of the citizens or to the peace of the state, the court is authorized and empowered to commit such person to the state insane hospital, or any similar institution in any parish within the jurisdiction of the court, there to be detained until he be restored to his right mind, or otherwise delivered by due course of law.

"Sec. 994. Whenever the grand jury, upon any inquiry which they may make as to the commission of any crime or misdemeanor, by any person, shall omit to find a bill for the causes aforesaid, it shall be the duty of such jury to certify the same to the court.

"Sec. 995. Whenever the jury, upon the general issue of not guilty, shall acquit any person for the cause aforesaid, it shall be their duty, in giving their verdict of not guilty, to state that it was for such cause."

These sections of the Revised Statutes do not authorize the criminal court to render a judgment of interdiction. They only provide for the safe-keeping of insane persons who are accused of crime (not indicted or not convicted on account of their insanity), and who would be dangerous to society if allowed to go at large. These provisions of the law therefore do not violate the article of the Constitution which confers upon the civil district court exclusive jurisdiction to pronounce judgment of interdiction. Nor do they deprive a person of his liberty without due process of law, which means due notice and opportunity to be heard.

Several days after the judgment of interdiction was rendered in this case in the civil district court, the attorneys for the defendant presented a petition to the court of appeal, setting forth the proceedings had in the criminal district court, and praying for a writ of habeas corpus to be directed to the criminal sheriff commanding him to produce Mr. Gasquet in court, and praying that, after due hearing, the latter be at once released from custody and restored to his liberty. The court of appeal issued the writ and, assuming original jurisdiction, and after hearing testimony, rendered a judgment in the proceeding against the sheriff, declaring that the relator, Gasquet, had recovered his sanity, and that his being restored to his liberty would no longer be dangerous to the community, and ordering him discharged and released from custody.

When the case was called for argument in this court, the appellant's counsel filed a plea of res adjudicata, founded upon the judgment which had been rendered by the court of appeal in the proceedings had against the criminal sheriff while the present appeal was pending here.

The court of appeal had no jurisdiction or authority to revoke or set aside the judgment rendered by the criminal district court committing Mr. Gasquet to the state asylum for the criminal insane, nor had the court of appeal jurisdiction of the subject-matter of the interdiction of Mr. Gasquet. Although article 104 of the Constitution provides that the courts of appeal and each of the judges thereof shall have power to issue the writ of habeas corpus at the instance of any person in actual custody, it does not follow that, after issuing such writ, the court may go on and exercise unlimited jurisdiction. Under article 85 of the Constitution, the jurisdiction of the Supreme Court extends to suits for interdiction. And article 98 provides that the jurisdiction of the courts of appeal shall extend to all cases, civil and probate, of which the civil district court of the parish of Orleans or the district courts throughout the state have exclusive original jurisdiction and of which the Supreme Court is not given jurisdiction, when the matter in dispute or the fund to be distributed shall not exceed $2,000, exclusive of interest.

The commitment rendered by the criminal district court in consequence of the criminal prosecution of Mr. Gasquet was not a judgment of interdiction, nor do the plaintiffs contend that it was. Hence, if the court of appeal had authority to set aside the com-

mitment of the criminal district court and release Mr. Gasquet from the custody of the criminal sheriff, the judgment of the court of appeal would nevertheless have no effect upon the judgment of interdiction rendered by the civil district court in this suit.

[4, 5] The defense of this case, on its merits, is that the evidence of the conduct and mental condition of the defendant during the period from 1896 to 1912 is of no importance —that the plaintiffs have only proven, according to the testimony of their expert witnesses, that the defendant is morally insane, and that a morally insane person is only a profligate. Interdiction is not allowed on account of profligacy or prodigality. R. C. C. art. 426.

In the cross-examination of one of the experts who had testified to the defendant's insanity, one of the attorneys for the defendant embodied in a question the standard lexicographers' definition of a "profligate," and asked the doctor if a person of that description was a morally insane person; and the doctor answered in the affirmative. The question propounded was:

"Q. I understand from my general examination of you, then, that a person who is not an idiot, who is not an imbecile, who is not a senile dement, who has no structural brain lesions, who is not a maniac, and who has no delusions, illusions, or hallucinations, but is an abandoned, dissolute, vitiated, depraved, vicious, wicked person, ruined in morals, abandoned to vice, lost to virtue or decency, extremely vicious, shamelessly wicked—an abandoned person, one who has lost all regard for principles of virtue and all decency, is a morally insane person?"

From the doctor's admission that a person described in the foregoing question is a morally insane person, and the description being that of a profligate, it is argued by the defendant's counsel that "moral insanity" and "profligacy" are synonymous and convertible terms; and that therefore, under the article of the Civil Code quoted above, interdiction is not allowed on account of moral insanity.

This court said, in the case of State v. Lyons, 113 La. 962, 37 South. 892, where a plea of insanity was urged by the defendant as an excuse for homicide:

"The doctrine of moral insanity, which consists of irresistible impulse coexistent with mental sanity, has no support either in psychology or law."

In the question above quoted, it is observed that all classes of insane persons—an idiot, imbecile, a senile dement, a person with structural lesions, a maniac, and a person having delusions, illusions, or hallucinations—are excepted from the description of depravity which the lexicographers call "profligacy" and which the expert witness calls "moral insanity." The fact that the authorities on insanity and psychology call profligacy moral insanity does not dispense with the provision of our Code that interdiction is not allowed on account of profligacy.

[6] Article 389 of the Civil Code provides that no person above the age of majority who is subject to an habitual state of imbecility, insanity, or madness shall be allowed to take care of his own person and administer his estate, although such person shall at times appear to have the possession of his reason. And article 422 provides that, not only lunatics and idiots are liable to be interdicted, but likewise all persons who, owing to any infirmity, are incapable of taking care of their persons and administering their estates.

The defendant's infirmity, which, the plaintiffs contend, renders him incapable of taking care of himself or his estate, is that he has alcoholic insanity and is a victim of the morphine habit. He testified in this case, and the record of his testimony would not, in itself, warrant his interdiction. He says that he desires to be cured of the craving for alcohol and narcotic drugs, and that he intends to be cured and to reform his life. When his physician, from the witness stand, expressed the belief that he could cure the defendant if he could have absolute control

of him and his surroundings, the plaintiffs' attorneys proposed, in open court, to have the case continued and the trial left open for such time as it might require for the doctor to cure the defendant by eradicating his craving for morphine and alcohol. The defendant's counsel declined the proposition, asserting that, although the defendant was an unfortunate victim of the habit which he had acquired through no moral fault of his, he was not a subject for interdiction. The plaintiffs' counsel then asked the court to continue the case in order to permit the defendant's physician to cure the defendant if he could. The request was refused.

The defendant is now about 37 years of age. He began drinking to excess as soon as he came to the age of majority, and, several years later, became a morphine habitué. Except during the several intervals in which he was under treatment for his alcoholic insanity and morphine poisoning, and perhaps the two or three years in which he worked, the 16 years of his manhood have been spent in drunkenness and debauchery. He underwent various treatments in several reputable institutions for alcoholism, without any success whatever, twice in 1901, again in 1903, and in 1905 and 1910; and he underwent the hyoscine treatment for his morphine habit in 1913, and the Lambert treatment for morphine twice in the same year. At the end of every treatment for alcoholism or the morphine habit, he immediately resumed the abuse of alcohol and then the morphine habit. During these years, he committed many irrational acts, was guilty of very eccentric conduct, and on several occasions displayed a dangerous disposition towards those against whom he imagined he had a grievance. He fired both barrels of a shotgun into the face of his mother's coachman at close range, shooting the man's eye out, without justification and with very slight, if any, provocation. It was for that crime that the grand jury refrained from indicting the defendant on account of his insanity.

The defendant inherited from his father a fortune of about $90,000, which he squandered in about two years of debauchery; and, by the will of his mother, he has inherited another fortune of about $115,000.

The testimony of a number of alienists, psychologists, trained nurses, and a few nonexperts who have observed the defendant's conduct during the past 16 years, covers 1,100 pages of typewritten matter, which need not be reviewed at length in this opinion. Some of the experts express the opinion that the defendant is insane, and others say he is not.

Coming from a family of wealth and refinement and possessed of considerable education, the defendant seems to have some very good attributes, and friends who sympathize with him, excuse his strange conduct, and have faith in his reforming. He has been pampered as if no responsibilities were ever intended to be imposed upon him. When he upsets all the calculations of the doctors and nurses trying to cure him of the alcohol or narcotic drug habit, by going out to a barroom and taking a drink, the failure of the cure is attributed to the fault of the deputy sheriff in not guarding Mr. Gasquet more closely. No one blames Mr. Gasquet; he is not supposed to have any responsibility for his own ruin or redemption. At times, he fully realizes his affliction and wishes to be cured, but he has acquired the habit of taking narcotic drugs and abusing alcoholic drink to such an extent that he is bereft of self-control.

[7] Act No. 100 of 1890 provides that any person who is an inebriate or habitual drunkard, and who, by reason of that infirmity, shall be unable to support himself or his family, shall be liable to be interdicted and shall be placed in the custody and

care of a curator who shall have full authority and control of the person of such inebriate, with power to place him in a hospital or other institution for the treatment and cure of his infirmity.

And the Act No. 157 of 1894, making provision for the cure of indigent drunkards or inebriates, at the expense of the parish or municipality in which they reside, defines a "drunkard" as:

"Any person who has acquired the habit of using spirituous, malt or fermented liquors, cocaine or other narcotics, to such an extent * * * as to deprive him of reasonable self-control."

It is not disputed that the defendant has acquired the habit of using spirituous liquors and narcotic drugs to such an extent as to deprive him of reasonable self-control.

Nor can it be denied that, on account of his infirmity, he would not have been able to support himself during the past 10 years, except for the fortune he spent.

The defendant's learned counsel contend that the Act No. 100 of 1890 only applies to indigent inebriates or drunkards. They say that the defendant's inability to support himself is not to be considered, because, with the fortune he squandered and the subsequent kindness of his relations, he has not had to support himself, and, if history does not repeat itself, with the additional fortune which the defendant has recently inherited, he will be well able to support himself hereafter.

The statute of 1890, however, is not, in terms, restricted to indigent persons. It provides that any inebriate or habitual drunkard who is, by reason of such infirmity, unable to support himself or his family, is liable to interdiction. And, from the requirement that the curator of such interdict must furnish bond and comply with all the formalities and requirements relating to the qualification of curators of other interdicts, it may be assumed that the Legislature had no intention to provide that only indigent persons should be interdicted for inebriacy or habitual drunkenness. Interdiction is pronounced not only for the welfare of the interdict, but with regard to the safety and welfare of society. In the case of interdiction for inebriacy or habitual drunkenness, consideration for the safety and welfare of society is emphasized by the subsequent legislative definition of a drunkard, as a person who has acquired the alcohol or narcotic drug habit to such an extent as to deprive him of reasonable self-control.

Under the terms of the statute, it will be within the power, and perhaps will be the duty, of the curator who shall be appointed to care for the interdict in this case, to place him in a hospital or other institution for the treatment and cure of his infirmity. And, when that is accomplished, there is ample provision in our law for the repeal and revocation of his interdiction.

The judgment appealed from is affirmed, at the cost of the estate of the appellant.

On Application for Rehearing.

PER CURIAM.    Rehearing denied.

MONROE, C. J., dissents, being of opinion that the rehearing should be granted.