[Civil No. 4161. Filed July 1, 1940.]

[104 Pac. (2d) 147.]

GEORGE W. PRATT and B. J. MOORE, Appellants, v. ANNA DALY, Appellee.

Mr. K. Berry Peterson and Mr. Bryce H. Wilson, for Appellants.

Messrs. Krucker & Fowler, for Appellee.

LOCKWOOD, J.—This is an action by Anna Daly, hereinafter called plaintiff, to recover damages from George W. Pratt and B. J. Moore, hereinafter called defendants. The material allegations of the complaint, in substance, are as follows:

Plaintiff and one John Daly were husband and wife, living together in Tucson. In November, 1936, Daly was an habitual drunkard, and with full knowledge of this fact, and after warning by plaintiff of his condition, defendants continuously and repeatedly, and over the protest of plaintiff, furnished to Daly intoxi-

cating liquors. As a result thereof she was deprived of the consortium which Daly had previously given to her and to which she was entitled as his wife. The prayer was for $3,000 in actual and $2,000 in punitive damages. Defendants demurred to the complaint on the ground it did not state a cause of action, which demurrer was overruled, and after various other preliminary legal matters were disposed of, the case went to trial before a jury, which returned a verdict in favor of plaintiff, in the sum of $500 actual and $500 punitive damages, whereupon this appeal was taken.

The first question for us to consider is whether the law recognizes an action of this nature. The theory of the complaint obviously is that defendants were guilty of a tort of some kind which caused an injury to plaintiff, and it is plain from the facts pleaded that the tort, if one existed, sounds in negligence. Actionable negligence is of two kinds, statutory and common law. Whenever a valid statute or regulation provides that a certain thing must or must not be done, if a failure to comply with such regulation is a proximate cause of injury to another, such failure is actionable negligence *per se.* *Salt River Valley W. U. Assn.* v. *Compton,* 39 Ariz. 491, 8 Pac. (2d) 249.

Common-law actionable negligence is the failure of one owing a duty to another to do what a reasonable and prudent person would ordinarily have done under the circumstances, or doing what such a person would not have done, which omission or commission is the proximate cause of injury to the other. *Salt River Valley W. U. Assn.* v. *Compton, supra.* Let us consider whether the complaint sets up either kind of negligence.

So far as common-law negligence is concerned, it has been held by an unbroken line of decisions that the mere sale of intoxicating liquor to a husband or wife, when it is consumed by the purchaser and thereby

a situation arises which results in financial injury to the other spouse, does not give rise to an action for damages. These cases are divided into two classes. In the first the rule is merely stated, with a citation to some prior authority, but it is not reasoned out in any manner. It is obvious that cases of this kind have no particular weight in and of themselves for they are necessarily based not only upon the conclusion but the reasoning of the authorities they cite, and, since the stream cannot rise above its source, are dependent upon the cited cases. The second class of cases are those where the reasoning which supports the result is given. In all of this last class of cases the line of reasoning followed is substantially the same. It is (a) the sale of intoxicating liquor is a perfectly lawful act and, therefore, cannot of itself be negligence, and (b) even if the sale is unlawful, it can never cause any harm unless the liquor is consumed by the purchaser.

It is assumed in all of the cases referred to that the consumption is an act independent of and distinct from the sale, *depending entirely upon the free will of the purchaser,* and it is, therefore, held (and correctly if the premise be true), that (1) the consumption and not the sale is the proximate cause of any injury, and (2) in cases where the husband or wife is plaintiff, the consumer is guilty of contributory negligence which is imputed to plaintiff, and no recovery can be had.

There is not a single case, so far as we can find, where the question was discussed or even raised as to whether the rule was different when the consumer had, to the knowledge of the vendor, reached such a state that his power to drink or not, as he chose, had been destroyed. The only case, so far as we are advised, that even remotely presents and discusses such a factual situation is that of *King* v. *Henkie,* 80 Ala. 505, 60 Am. Rep. 119. Therein the court says:

" . . . It is shown that the deceased was helplessly drunk when he purchased and drank the liquor, so much so as to render the exercise of ordinary care by him impracticable, if not impossible. The presumption is that this condition was brought about by his own *voluntary* or negligent act, by the persuasion or coercion of another. If we admit that the state of mind thus produced was analogous to that of one *non compos,* or insane, so that the deceased was in mental darkness and so unconscious as to be at the moment incapable of knowledge or consent, thus rendering him morally unaccountable, yet the fact confronts us that this condition was the result of *his own negligence or wantonness,* and without it the accident of his death would not probably have occurred. The deceased, *by the exercise of ordinary care,* might have escaped making himself helplessly drunk. By not doing so he was the author of his own death, in view of the fact that it does not appear that the defendants, after the fatal draught was taken, could by the exercise of ordinary care, or even by any practicable means at hand, have avoided the consequences of death which almost instantly followed. . . . " (Italics ours.)

It will be seen that this case assumes the purchaser at the time he consumed the liquor had full power to drink or not, as he willed.

During the middle of the last century it became apparent that great injury was often done to wives and children as a result of the sale of intoxicating liquor to those who would abuse its use, and in many states what are commonly denominated civil damage acts were adopted. These acts, in substance, provided that if liquor was sold to a person under circumstances set forth in the act, specified parties injured thereby in person, property or lack of support might bring a suit against the vendor for damages. These acts were universally upheld as within the constitutional power of the various legislatures, but as no such statute exists in Arizona, cases from other states based upon civil damage acts are not in point in the present case.

In 1866, however, in the case of *Hoard* v. *Peck,* 56 Barb. (N. Y.) 202, an action was brought by a husband against a druggist to recover damages for selling to plaintiff's wife large quantities of laudanum to be used by her as a beverage, as a result of which the wife was made ill and her mind affected, so that she was unable to perform her duties as a wife, and the husband lost her affection and society. The claim was made by defendant that the sale of laudanum was lawful, and further that the wife having taken it voluntarily, the proximate cause of the injury was not the vending but the consumption, the defense being similar in all respects in principle to that made in cases under the common law involving intoxicating liquors, to which we have referred. The court said, in upholding the right of action:

"The sale of laudanum as a beverage is very uncommon. It is well known to be poisonous. It cannot be used as a beverage without impairing the physical and mental energies; and this is generally well known, and it certainly is to all druggists. . . . The druggist, by the act of handing it to her for that purpose, is as much responsible for the consequences as though he assisted her directly in pouring it down her throat. If this were an action for negligence of the defendant, negligence of the wife would prevent the plaintiff from recovering, on the ground that her negligence contributed to the injury; but it is a case where the druggist and wife united in the doing of acts injurious to the interests of the husband. . . .

"In this case, the wife and defendant united and acted in concert, in doing the wrong complained of, and if the defendant had performed his duty to the plaintiff, by informing him what they were doing, the result which was reached would have been prevented."

This is the first case which discussed and recognized the now universally accepted scientific principle that there are substances which, when consumed steadily, effectually destroy the power of the consumer to cease

their use, and also injure or destroy his normal physical and mental health.

Following this case, in *Holleman* v. *Harward,* 119 N. C. 150, 25 S. E. 972, 975, 56 Am. St. Rep. 672, 34 L. R. A. 803, a similar action was brought and the court therein followed the rule laid down in *Hoard* v. *Peck, supra,* saying:

" . . . But laudanum is well known to be a poisonous drug. As a beverage, it cannot be drunk without injury to the body, affecting the health of the physical and moral powers, and this is known to most persons of ordinary intelligence and to all druggists. The defendants knew, taking the complaint in this appeal to be true, that the plaintiff's wife did not buy the laudanum for medicine. They knew that she was buying it as a beverage; that she was violating her duty to her husband in destroying her health, and thereby rendering herself unfit as a companion for him, and to render proper service in the household. They assisted her, and encouraged her, for gain, with the means of doing all this in face of his frequent protests and warnings. The habit she had formed was the direct result of the use of the drug, which the defendants sold to her in such large quantities, and they knew it, and persisted in it, although repeatedly warned and entreated by the husband not to do so."

—and using language which intimated, without specifically so holding, that, under some circumstances, the same rule would apply to the sale of intoxicating liquor.

In 1912 the case of *Flandermeyer* v. *Cooper,* 85 Ohio St. 327, 98 N. E. 102, 105, Ann. Cas. 1913A 983, 40 L. R. A. (N. S.) 360, was decided. It also involved the sale of a habit-forming drug, and the action was brought by the wife on account of a sale to the husband. The damages were not based on the loss of services, nor was there a claim that the wife had lost the financial support of the husband. They were claimed because the husband was deprived of moral

sensibilities, and was, therefore, unfitted and incapable to give the society, companionship and consortium which he had formerly given and which was due to the wife.

Defendant, among other things, urged that no action lay under the common law in favor of the wife for the loss of the consortium of the husband. The court agreed that originally the common law recognized no such right in the wife, but held, in substance, that under the relaxation of the common-law rules in regard to the merger of the wife's legal status and personalty in that of the husband, the principle of the common law which had previously allowed a right of action to the husband for the invasion of the right of consortium now applied equally to the wife, pointing out that whenever by the growth or development of society or a statutory change of the legal status of the individual he was brought within the principles of the common law, it would then offer him the same relief which it had previously offered to others who were originally entitled thereto under that principle. Consortium was defined by the court to be "the conjugal fellowship of husband and wife, and the right of each to the company, co-operation and aid of the other in every conjugal relation," and it was held that the remedy for the invasion of these rights was not like an action for damages to means of support or property, caused by the use of intoxicating liquor, but was of a different nature entirely. In answer to the plea that the damage was caused by the voluntary act of the husband in taking the habit-forming drug, the court pointed out that the druggist must have known the user of such a drug, when he reaches a certain stage, was incapable of volition so far as refusing to use it was concerned, and that the sale was made with knowledge of this fact. It held that under such circumstances the consumption of the drug was so merged

in its sale that it was in substance one and the same act, and added:

" . . . Individuals must be held to have contemplated the natural and probable result of their own acts purposely and intentionally committed, and it would be just as reasonable to say that due regard for the rights of others would not require the individual in the ordering of his own affairs to take into account the force of gravity, as to say that one, who sells morphine to a person known by the seller to be a helpless victim of this drug, is not required to contemplate the natural and probable result of the use the unfortunate purchaser is sure to make of it."

■ Later, this rule was followed in the case of *Moberg* v. *Scott,* 38 S. D. 422, 161 N. W. 998, L. R. A. 1917D 732. We have found no cases holding to the contrary, and may, therefore, accept the rule that under the common law, as modified by the various "Married Women's Acts," an action lies by either spouse against one who knowingly sells a habit-forming drug to the other, except for a lawful medical purpose, if the effect of the sale is to cause or aggravate the habitual use of the drug.

The Restatement of the Law of Torts, volume 3, page 696, gives the rule in the following language:

*"Sale to wife of habit-forming drug.* One who, without a physician's direction, sells or otherwise supplies to a married woman a habit-forming drug with knowledge that it will be used in a way which will cause harm to any of the legally protected interests of the husband is liable for harm caused by such drug to those interests unless the husband consents to the wife's acquisition or use of the drug."

—and states that the same rule applies to a sale to the husband in an action by the wife under similar circumstances. It is added, however, that

"c. The expression 'habit-forming drugs' as used in this Section does not include intoxicating liquor.

"Special Note: Statutes in many States forbid the sale of intoxicating liquors to one who is intoxicated or to one known to be addicted to excessive use thereof. Many of these statutes are construed to give the same effect to their violation as is given by the common law to the sale of a habit-forming drug to one known to be addicted to the use thereof. Thus, under many such statutes a husband is not barred from a recovery for harm to his legally protected interests resulting from the use by his wife of liquor purchased by her in violation of a statute because of her consent or contributory negligence in using the liquor or by her conduct while under the influence thereof."

A careful study of the cases following the principle laid down in *Hoard* v. *Peck, supra,* will show that the reasoning upon which they were based is that there are certain substances which, if used habitually, destroy the volition of the user to such an extent that he has no power to do aught but consume them when they are placed before him; that the consumption and the sale of such substances are, therefore, merged and become the act of the vendor; the sale is, therefore, the proximate cause of the loss of consortium, and the consumer cannot, having lost his volition to act, be guilty of contributory negligence. The best known of these substances is opium and its various derivatives, but it is a well-known scientific fact that many other things, under certain circumstances, will produce the same result. Cocaine is an instance among the drugs, and it is equally well established that the excessive use of intoxicating liquor may, and frequently does, have the same effect. We think it would be a narrow and illogical limitation of the rule to hold that because one habit-forming substance is a "drug" in the technical sense of the term, and another is a "liquor," different rules should be applied to the sale and use thereof. In fact, there is no specific holding applying such limitation in any of the recorded cases, and in *Holleman* v. *Harward, supra,* the court inti-

mated strongly that under certain circumstances intoxicating liquor might fall within the same rule as laudanum as a habit-forming substance. Of course, since there is not the same presumption that the use of liquor will eventually cause the loss of volition that there is with a habit-forming drug, it is incumbent upon plaintiff to prove that to the knowledge of defendant such a stage has been reached by the consumer, but if this fact is once established, in all reason and logic the right of action should be the same in one case as in the other. We are satisfied from our examination of the cases that the language of the Restatement, *supra*, "c. The expression 'habit-forming drugs' as used in this section does not include intoxicating liquor," was not meant as a declaration that the decided cases *exclude* liquors from the rule, for no such cases have been cited to us, but rather is merely a recognition of the fact that the precise issue had not yet been presented to and determined by any court.

It may be urged (a) that there is no precedent in the recorded cases for such an action, (b) that we are, in effect, legislating on a subject which should be reserved for the legislature and not for the courts, and (c) that the consequence of such a rule will be the filing of many unjust actions against vendors of liquor. So far as the first contention is concerned, it is answered by the court in *Hoard* v. *Peck, supra,* in the following language:

"There are no decisions upon any case identically the same as the one under consideration. It does not however prove, because the case is new, that the action cannot be maintained. The action is adapted to every special invasion of one's rights. [Citing cases.]"

Every requested application of the principles of the common law to a new set of circumstances is originally without precedent, and some court must be the first one to make the proper application.

In answer to the second contention, we are not asked to make a law. We are asked to declare what the common law is and always has been, and a declaration by us that it has always *permitted* such an action, even though none has ever actually been brought, is no more legislation than would be a declaration that it does not.

So far as the bringing of unwarranted actions is concerned, if the facts do not show the action is justified, we must assume that the trial court and jury will properly apply the law, and we may not refuse to declare it correctly merely because there are some who may attempt to apply it to cases where the facts do not sustain it.

On a careful review of all the authorities and a consideration of well-known scientific facts, we think that under the *rationale* of the rule laid down in *Hoard* v. *Peck, supra,* and the cases following it, the sale of intoxicating liquors under the circumstances indicated above is subject to the same rule as the sale of what is, in the strict sense of the word, a habit-forming ''drug,'' and that under such circumstances an action for the sale of the former should be upheld as allowed by the common law as well as the latter.

The allegation of the complaint is that the husband of plaintiff was an ''habitual drunkard,'' and that the fact was well known to defendants. The term ''habitual drunkard'' has been defined repeatedly, and in almost all of the definitions the principal element emphasized is that such a person has lost the will power to resist the temptation when the liquor is offered him. *Interdiction of Gasquet,* 136 La. 957, 68 So. 89; *Wilson* v. *Wilson,* 128 Ark. 110, 193 S. W. 504; *O'Byrne* v. *O'Byrne,* 211 Ala. 450, 100 So. 781. We hold, therefore, that the complaint states a good cause of action under the common law.

The next question arising is whether there was a nonjoinder of parties. The action was brought by the wife alone, and it is urged that any damages recovered would be community property, and that in such case the husband must be joined as a party. Sections 2172 and 3729, Revised Code of 1928, read in part, respectively, as follows:

"*Community property; power of disposition.* All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, or earned by the wife and her minor children, while she has lived or may live, separate and apart from her husband, shall be the community property of the husband and wife. . . . "

"*Married woman as party; suits for necessaries.* When a married woman is a party her husband shall be joined with her except, when the action concerns her separate property, or is between herself and her husband, in which she may sue or be sued alone. . . . "

It is contended that the case of *Pacific Const. Co.* v. *Cochran,* 29 Ariz. 554, 243 Pac. 405, 406, supports this rule. That action was brought by plaintiff and her husband for personal injuries received by plaintiff as a result of the alleged negligence of defendant. The question arose as to whether the wife was guilty of contributory negligence, it being argued that because any damages which might have been recovered were personal property belonging to the community and subject to the control and disposition of the husband, he was a necessary party and any knowledge which he might have had of the dangerous condition of the instrumentality which caused the injury, was imputed to the wife and the situation was the same as though she had had personal knowledge of the condition. We said:

"We think the court properly stated the law as it exists in this state and community property states generally. The text in 5 R. C. L. 843, § 23, is as follows:

" 'As a general rule, causes of action for injury to the person of either spouse during marriage and the damages recovered therefor are community property, and where this rule prevails contributory negligence on the part of the husband will defeat an action to recover for an injury to the wife.' "

We think the rule laid down in *Pacific Const. Co.* v. *Cochran, supra,* as applied to the facts therein, is correct, but that it is not in point in the present case. Upon an examination of the case of *Hoard* v. *Peck, supra,* and the others following it, it will appear that the contributory negligence of the party taking the drug was urged as a defense, and the court in each of the cases pointed out that this defense was not good, for the reason that the vendee had so far lost control of volition that his act of consumption was merged with the act of the vendor in selling the drug, and, therefore, contributory negligence could not exist.

■ We have frequently said that the community property laws of Arizona are more like those of Washington than of any other state, and that the rulings of the courts of that state are very persuasive when similar questions arise under our law. In the case of *Beach* v. *Brown,* 20 Wash. 266, 55 Pac. 46, 72 Am. St. Rep. 98, 43 L. R. A. 114, a question arose very analogous to that under consideration. Plaintiff, Annie Beach, brought suit against Abbie Brown for alienation of affection of the former's husband. It was contended there, as here, that the action could not be maintained for the reason that a married woman could not maintain a suit for tort in her own name without her husband joining her, where the damages would be community property. The court discussed at some length the nature of the action for alienation of affection, and stated that it was based on the consortium which the one spouse owed the other, and that the right of consortium was reciprocal, quoting approv-

ingly from *Foot* v. *Card,* 58 Conn. 1, 18 Atl. 1027, 18 Am. St. Rep. 258, 6 L. R. A. 829, as follows:

" 'So far forth as the husband is concerned, from time immemorial the law has regarded his right to the conjugal affection and society of his wife as a valuable property, and has compelled the man who has injured it to make compensation. Whatever inequalities of right as to property may result from the marriage contract, husband and wife are equal in rights in one respect, namely, each owes to the other the fullest possible measure of conjugal affection and society. The husband owes to the wife all that the wife owes to him. *Upon principle, this right in the wife is equally valuable to her, as property, as is that of the husband to him.* Her right being the same as his in kind, degree, and value, there would seem to be no valid reason why the law should deny to her the redress which it affords to him.' . . . " (Italics ours.)

The conclusion was that the wife, notwithstanding the statute in regard to joinder of the husband, might bring the suit in her own name, and that it was immaterial whether the damages which might be recovered were or were not community property. The ruling was followed in the case of *Stevens* v. *Depue,* 151 Wash. 641, 276 Pac. 882.

In the case of *Williams* v. *Williams,* 20 Colo. 51, 37 Pac. 614, the question of the right of a wife to maintain an action for alienation of affection of her husband was in question and the Supreme Court of Colorado also approved of the rule that the right of the wife to consortium was a property right as valuable as that of a similar right on the part of the husband, and that the wife might maintain an action for damages on that ground. This rule was also laid down in the case of *Humphrey* v. *Pope,* 122 Cal. 253, 54 Pac. 847, 849, and the court said:

" . . . The only possible impediment to the right of action that may be suggested arises out of the question, would not the damages recovered be property of

the community, and, if so, would not that fact require the husband to be joined? She is given the right of action, as we have seen, by section 49, Civ. Code. She is given the remedy in her own name by section 370, Code Civ. Proc. Where the husband sues for the loss of his wife's affections, the fact that the damages might or might not be held to be community property would not affect his right of action, and we can see no reason why any different rule should apply where the wife brings the action. Conceding, but not deciding, that any damages the plaintiff may recover would be community property, we think the action properly brought in her name alone.''

While the decision was based on the statute, the reasoning is that of the Washington and Colorado cases.

 We are of the opinion that the right of action for loss of consortium is a property right and belongs to the individual spouse. This being the case, it would seem in reason to make no difference as to the particular thing which caused the loss of the consortium, or as to whether any damages recovered become community property.

We hold, therefore, in accordance with the principle announced in the decisions above cited, that the *right of action* in the present case was in the wife alone, and this being true, the husband was neither a necessary nor a proper party to the action. This disposes of all the assignments of error raised on the appeal.

The judgment of the trial court is affirmed.

McALISTER, J., concurs.

ROSS, C. J. (Dissenting).—I think most people will agree that if Moore and Pratt, saloonkeepers, sold intoxicating liquors to Anna Daly's husband, after they had been advised by her that he was an habitual drunkard and not to sell to him, and thereby deprived her of his support or society, she should have a right

of action against them for whatever damages she sustained, and this right should be extended to his children and other dependents, if any. I certainly think so, and I would not hesitate to join my colleagues in so declaring if it was within the province of the court to create a right of action when none existed theretofore. I cannot, however, permit myself as a member of the judicial department of the government to invade and take over a function of the lawmaking department, however meritorious or appealing the occasion.

The legislatures of a great many of the states have passed what are known as ''Civil Damage Acts'' giving those persons who have sustained injury from the sale of intoxicating liquors to the father or mother or an infant a right of action against the seller. Joyce on Intoxicating Liquors, page 476, section 420, explains the reason for such legislation as follows:

''In view of the evils resulting from excessive indulgence in intoxicating liquors, such as impoverishment of families, injuries to others, and the creation of public burdens, the legislatures in many states have sought to better control the traffic by enacting statutes giving a right of action in favor of persons injured by the intoxication of another against the one selling or furnishing the liquors causing or contributing to such intoxication. These statutes in most cases having in view the protection of the wife and children of the person intoxicated, and the fact that they are more or less deprived of their means of support by the condition of that person are wider in their scope in some states than they are in others. . . . ''

In the following section (421) the author states:

'' At common law there was no right of action against the seller of liquor for an injury arising from the intoxication of the purchaser. The right is a statutory one. . . . ''

In 15 Ruling Case Law, 429, section 198, it is stated:

''To supply the defect of the common law, which affords practically nothing in the way of remedies for

injury or damage caused by intoxication, the legislatures of many states passed statutes giving a right of action in the premises; . . . "

The books are full of cases brought under the civil damage acts, and almost invariably it is stated by the courts that no right of action existed at common law for an injury arising from the intoxication of the purchaser. For instance, in *Kennedy* v. *Garrigan,* 23 S. D. 265, 121 N. W. 783, 785, 21 Ann. Cas. 392, the court said:

"No right of action exists save that expressly given by the statute, and the remedy prescribed cannot be enlarged except by further legislative enactment. . . . "

In *Healy* v. *Cady,* 104 Vt. 463, 161 Atl. 151, 152:

"This statute was enacted to compel those who will hazard causing damage by furnishing intoxicating liquor to others to answer for such damage to those who may suffer it. It created a remedy for wrong where there was none before. . . .
"It should be borne in mind, too, that this statute by necessary implication changed the common-law rule of proximate cause which obtains in other tort actions. . . . "

In *Schulte* v. *Schleeper,* 210 Ill. 357, 71 N. E. 325, 326:

"The dramshop act is highly penal in its character. It provides remedies unknown to the common law, and we have invariably held that it should be strictly construed, and that a plaintiff must bring himself clearly within its terms. . . . "

In *Demge* v. *Feierstein,* 222 Wis. 199, 268 N. W. 210, 212:

" . . . This section creates a cause of action in favor of those injured by the intoxication of a minor or habitual drunkard against a vendor of liquor who has been notified in writing by certain specified persons not to sell liquor to him. The complaint contains no allegations that bring the case within the statute. Even if this were not so, no cause of action is stated

under the common law against the defendants Feierstein, and, in consequence, no cause of action is stated upon the bond. While plaintiff claims that such a liability exists, she cites no authority supporting this view. The cases are overwhelmingly to the effect that there is no cause of action at common law against a vendor of liquor in favor of those injured by the intoxication of the vendee. Black, Law of Intoxicating Liquors, c. 13, § 281; *Buntin* v. *Hutton,* 206 Ill. App. 194; *Healey* v. *Cady,* 104 Vt. 463, 161 Atl. 151; *Coy* v. *Cutting,* 138 Kan. 109, 23 Pac. (2d) 458; *State* v. *Johnson,* 23 S. D. 293, 121 N. W. 785, 22 L. R. A. (N. S.) 1007; *Kraus* v. *Schroeder et al.,* 105 Neb. 809, 182 N. W. 364, 365.

''In view of the common-law rule, it has been necessary, *where opinion favored the creation of such a cause of action, to enact civil damage laws. . . . ''* (Italics mine.)

In *Seibel* v. *Leach,* 233 Wis. 66, 288 N. W. 774, 775, the court approved what was ruled in the Demge case and added:

'' . . . Courts may in proper instances apply old rules to newly created conditions, but they cannot create new rules for conditions already regulated. The common law rule holds the man who drank the liquor liable and considers the act of selling it as too remote to be a proximate cause of an injury caused by the negligent act of the purchaser of the drink. The decision in *Demge* v. *Feierstein, supra,* sets forth the law controlling in the case at bar.''

In *Coy* v. *Cutting,* 138 Kan. 109, 23 Pac. (2d) 458, 461, the wife instituted the action under the Kansas Civil Damage Act to recover damages, and the court, speaking of such action, said:

'' . . . it is purely statutory, since no similar cause or causes of action existed at common law, and recovery may be had for both proximate and remote injuries. . . . ''

The common law ascribed an injury from intoxication as the proximate result of *drinking* the intoxicat-

ing liquor and not the *sale* of the liquor. Under the common law, a party, to recover damages for tort of another, must show that his injury was proximately caused by the latter's negligence. It was not enough to show that defendant was remotely at fault. The rule is so inflexibly fixed under the common law, in reference to the use and abuse of liquor, that no court has ventured to change it. Where persons are given redress, it is statutory.

There is no purpose in adding other quotations to the same effect, although they are numerous and from many different state courts.

While the standard authors and the decisions acquiesce in the soundness of the holding in the promiscuous selling or dispensing of habit-forming drugs to a married man or a married woman giving rise to a cause of action against the sellers in favor of those persons injured thereby, no court nor writer on the law has announced that principle as applicable to the sellers of intoxicating liquors until now. The prevailing opinion cites no case so holding, but states that the court in *Holleman* v. *Harward,* 119 N. C. 150, 25 S. E. 972, 56 Am. St. Rep. 672, 34 L. R. A. 803, "intimated, without specifically so holding, that under some circumstances, the same rule would apply to the sale of intoxicating liquor." The Holleman case was a drug case and the intimation by the court that the principle that ruled it was applicable to the sale of intoxicating liquors was pure *dictum.* It would be more convincing if some case or cases could be found applying the habit-forming drug rule to the sale of intoxicating liquors.

This court has stated that it will follow the statement of the common law as made by The American Law Institute, except where otherwise committed by its decisions or where governed by statute. This authority says the expression "habit-forming drugs"

does not include intoxicating liquor. Restatement, Law of Torts, vol. 3, p. 696. It refers to the civil damage acts and makes the observation that many of them are "construed to give the same effect to their violation as is given by the common law to the sale of a habit-forming drug to one known to be addicted to the use thereof." Id., c. Special Note. In other words, the rule in habit-forming drug cases has been by statute, as construed, made applicable to liquor sales and not otherwise. The courts have not done it and I protest that we should not, but that it should be left to the legislature to supply the right and the remedy, as has been done in other states.

This is an action by the wife for the wrongful destruction or impairment of consortium through sale of intoxicating liquor to her husband, an habitual drunkard. In the recent comprehensive and understanding work of American Jurisprudence, volume 27, page 99, section 499, it is said:

"There are three such classes of torts by an outsider which involve a violation of a marital right of one spouse against the world: (1) those relating to alienation of affections and criminal conversation; (2) those relating to diminution of consortium resulting from injuries to the other spouse caused by acts of negligence tortious also as to the other spouse, as where a third person through negligent operation of an automobile injures one spouse and thereby effects a diminution of services, society, solace, etc., of the injured to the other spouse; (3) those relating to diminution of consortium resulting from injuries to the other spouse caused by acts not tortious to the other spouse, as where a third person knowingly sells a habit-forming drug to one spouse to be used to satisfy craving, and not for medicinal purposes."

It will be noticed that loss of consortium occasioned by sale of intoxicating liquors to the other spouse is not included in any of the three named classes.