MARTHA COWMAN, individually and as administratrix of estate of Ernest Cowman, Jr., deceased, and ERNEST COW-MAN, SR., appellants, v. PEARL HANSEN, d/b/a SHORTY'S PLACE, et al., appellees.

No. 49430.

(Reported in 92 N.W.2d 682)

OCTOBER 14, 1958.

REHEARING DENIED DECEMBER 19, 1958.

Frederick D. Lewis, Jr., and McMullin, Running, Test & Gardner, all of Des Moines, for appellants.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, and E. Raymond Mick, Carl W. Murphy, Johnson & Johnson, and Bert A. Bandstra, all of Knoxville, for appellees.

LARSON, J.—Plaintiffs' action at law for damages is divided into six counts. The first five counts thereof are based upon civil liability arising out of the Dram Shop law, appearing as chapter 129, Code of 1954. Count VI is based upon negligence under the common law. Pursuant to certain amendments, beer as defined in section 124.2, subsection 10 of the Code, was identified as the beverage served by defendant tavern owners. Allegedly, this caused the intoxication of Raymond F. Vohl and established a legal cause of action against the defendants for the death of Ernest Cowman, Jr., who was fatally injured later in an automobile accident resulting from the negligent driving of Vohl. Motions to dismiss by defendants, based upon the theory that the Dram Shop law in Iowa does not apply because beer containing less than four per cent' of alcohol by weight is non-intoxicating by legislative definition, were sustained by the trial court. The trial court also dismissed plaintiffs' Count VI for the reason that "the common law provided for no relief or remedy" under the circumstance, and plaintiffs appeal.

This appeal presents but two issues: (1) Did the legislature, by enacting section 125.2 of the Code, exclude from the pre-existing law in chapter 129 of the Code, beer containing less than four per cent of alcohol by weight; and (2) does the common law recognize a right of action in tort against a dispenser of alcoholic beverages for injury or damage caused by a consumer after he has left the establishment?

Chapter 129, Code of 1954, provides in section 129.2 as follows:

"Every wife, child, parent, guardian, employer, or other person who shall be injured in person or property or means of support by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name against any person who shall, by selling or giving to another contrary to the provisions of this title any intoxicating liquors, cause the intoxication of such person, for all damages actually sustained, as well as exemplary damages."

Substantially, the provisions of this statute have remained unchanged since the Code of 1873. It has appeared in Title VI of the Code since 1924. In 1933 the legislature enacted what is known as the Liquor Control Act, which also became a part of Title VI, and at that time made a distinction between beer and other alcoholic beverages. It adopted section 124.2, subsection 10, which provided that beer containing not more than four per cent alcohol by weight should come under the provisions of chapter 124 and be dispensed in a different manner than other beverages containing a greater per cent of alcohol. At the same time it amended section 1923, which now appears in the Code as section 125.2, by striking the period after the word "whatever" and inserting in lieu thereof the words, "provided, however, that the words 'liquor' or 'intoxicating liquor' wherever used in title six of the code of Iowa, 1931, shall not be construed to include beer * * * containing not more than three and two-tenths per centum (3.2%) of alcohol by weight." Subsequently it was again amended raising the 3.2% to 4%. The section now provides:

"The word 'liquor' or the phrase 'intoxicating liquor' *when used in this title,* shall be construed to include alcohol, brandy * * * and all intoxicating liquor whatever provided, however, that the words 'liquor' or 'intoxicating liquor' *wherever used in this title* of the Code *shall not be construed to include beer* * * * containing not more than ·four percent of alcohol by weight." (Emphasis supplied.)

Plainly stated, these sections of the Code are a mandate that we shall not construe beer containing not more than four per cent alcohol intoxicating wherever the term "intoxicating

362

liquor" is used in Title VI. The words used admit of no other meaning.

I. Statutes that are clear and unambiguous are not subject to interpretation by the courts. No principle of law has received more attention in decisions and in legal treatises. Mallory v. Jurgena, 250 Iowa 16, 92 N.W.2d 387; Hindman v. Reaser, 246 Iowa 1375, 72 N.W.2d 559; Dingman v. Council Bluffs, 249 Iowa 1121, 90 N.W.2d 742; Tucker v. Nason, 249 Iowa 496, 87 N.W.2d 547; Hahn v. Clayton County, 218 Iowa 543, 255 N.W. 695; Palmer v. State Board of Assessment and Review, 226 Iowa 92, 94, 283 N.W. 415, and cases cited therein; Jones v. Thompson, 240 Iowa 1024, 1036, 38 N.W.2d 672, 678. In the latter case we clearly stated the rule in Iowa that, "The only legitimate purpose of statutory construction * * * is to ascertain the legislative intent. And when the language of the statute is so clear, certain and free from ambiguity and obscurity that its meaning is evident from a mere reading, then the canons of statutory construction are unnecessary, because there is no need of construction * * *. We need not search beyond the wording of the statute." We must refuse to do so here. When the general assembly said "wherever used in this title", its meaning is quite clear.

Admittedly, this amendment illustrates both the good and evil of reference amendments. 50 Am. Jur., Statutes, section 36, page 57. If perchance the legislature did not wish to amend the Dram Shop Act, the use of the words "wherever used in this title" were unfortunate, for they are so clear they permit of no deviation. Then, too, if there was to be a deviation, where in Title VI would the exception or exceptions apply? Does the law permit us that lawmaking power? Obviously it does not.

In Eysink v. Board of Supvrs., 229 Iowa 1240, 1244, 296 N.W. 376, 378, we laid down the rule which is applicable here, as follows:

"It must be remembered that it is only where a statute is of doubtful or uncertain meaning that courts are at liberty to apply rules of construction. Where the language of a statute is plain and unambiguous and its meaning clear, courts are not permitted to search for its meaning beyond the expressed terms of the statute. This court has no power to write into the statute

words which are not there. These rules are of course elementary, and do not require the citation of authorities. * * * As this court observed in a case involving the construction of the Sales Tax Act, 'In construing this statute we are bound by the definition of terms made use of by the legislature. * * * "the legislature is its own lexicographer." ' Sandberg Co. v. Board, 225 Iowa 103, 107, 278 N.W. 643, 645."

We agree with the trial court and the defendants that here the legislature has been its own lexicographer insofar as Title VI of the Code is concerned. It is presumed to have known of the provisions of chapter 129 of the Code, and that it was in Title VI of the Code when enacting the amendment to what is now section 125.2. It redefined "liquor" and "intoxicating liquor" as used in Title VI of the Code, and by clear and definite reference made it applicable throughout the title without exception.

Those who feel the legislature actually did not intend to distinguish between a whisky and beer drunk in the application of our civil damage act must take their case to the general assembly for correction. We concede the logic of plaintiffs' argument against any distinction as far as the public welfare is concerned, but it is clearly addressed to the wrong government body. It is a proper matter for the legislature to consider, and if perchance the reference "wherever used in this title" was too broad, only that body can make the correction. In the meantime we must presume that it well knew it could have excepted chapter 129 of the Code from that definition of "intoxicating liquor", but did not.

The Dram Shop Act being a civil damage act, its extent and conditions, of course, are clearly within the power of the creator, our legislature. It can extend or diminish the right and provide the remedy as it sees fit. It is its own lexicographer, and common-law and dictionary definitions must yield when the legislature, by express enactment, defines its own terms. Muscatine City Water Works v. Duge, 232 Iowa 1076, 1082, 7 N.W.2d 203; 82 C. J. S., Statutes, section 315; 50 Am. Jur., Statutes, sections 261, 262, 263.

We find no quarrel with plaintiffs' contention that, when construction is appropriate, we should construe such a statute

so as to suppress the mischief and advance the remedy. It simply is not applicable here. Their contention, that there is an ambiguity involved herein due to the fact that chapter 129 itself was not specifically amended to exclude four per cent beer as nonintoxicating, is not persuasive. It is quite clear that the general assembly wished only to avoid much needless repetition, and indeed it would be hard to find a place where the legislative intent to amend generally was more clearly expressed. The proviso "that the words 'liquor' or 'intoxicating liquor' *wherever used* in this title * * *" is all inclusive. As before pointed out, it even goes further. There is a mandate to the courts that no construction should be made that will permit the inclusion of beer containing not more than four per cent alcohol by weight as "intoxicating liquor."

Further citations are unnecessary, but a recent discussion of this subject in Young v. O'Keefe, 246 Iowa 1182, 69 N.W.2d 534, is in point. Plaintiffs therein argued a distinction between male and female in a retirement statute seemed illogical and was not intended by the lawmakers. However, we decided the court was bound by the clear words of the statute referring only to male policemen.

It is our conclusion here that we are not permitted to engage in any fancy application of rules of construction. The words clearly express the intent to remove from the Dram Shop law the civil rights and remedies formerly created and established for persons injured, or damages by one who consumed intoxicating liquor provided by another, when that liquor was beer containing not more than four per cent alcohol by weight. However, it is not to be understood that we are holding, as a matter of law, that four per cent beer is not intoxicating.

Although sufficient Iowa authority and reason support our conclusion, we note that the Supreme Court of Minnesota was recently faced with a similar question in the case of Beck v. Groe (1955) 245 Minn. 28, 70 N.W.2d 886, 52 A. L. R.2d 875, and came to the same conclusion. In passing on that problem, it said at pages 39 and 42 of 245 Minn., pages 894 and 896 of 70 N.W.2d:

"The legislature in the exercise of its police power for the purpose of controlling and regulating the liquor traffic has a

wide discretion in defining intoxicating liquor * * *. We cannot ascribe to the legislature any intent not expressed in its enactments when it considered all related matters involving the control and regulation of alcoholic beverages of whatever content and specifically designated 3.2 beer as nonintoxicating and all spirituous, vinous, or malt beverages in excess thereof as intoxicating liquor setting up separate control and separate regulations in dealing with related subjects. We must and do take it for granted that the legislature had in mind the effect of later and specific legislation, upon existing statutes, where inconsistencies might arise * * *."

The Minnesota court concluded that the illegal sale of 3.2 beer to the minor violated the beer control act, but that it did not constitute an illegal sale of intoxicating liquor under their present liquor license law regulating the sale of intoxicating liquor nor the civil damage act.

II. Plaintiffs next assert that, in case there is no statutory right to recover under the Dram Shop law, the sale or gift of four per cent beer to an intoxicated person would give rise to a common-law tort liability against the tavern owners when the consumer so negligently drove his car that it resulted in the death of plaintiffs' son.

As a basis of that contention, in Count VI plaintiffs say that when defendant tavern owners saw, or should have seen, the intoxicated condition of Vohl, they failed to exercise due care toward the plaintiffs' intestate, and that they knew or should have known that Vohl would drive a car and that young Cowman or others would be injured or killed. In other words, plaintiffs contend the common law permits recovery for such negligence by the tavern owners and should recognize such negligence as the proximate cause, or one of the proximate causes, of the accident, injury and damage. The trial court did not agree, and neither do we.

The common-law coverage for tort liability is well known and we have considered it on many occasions. Its application is more difficult, so when we say the court can apply old rules to new situations, and not create new rules for new situations, we mean the court may extend its rules as to negligence and proximate cause only so far and no further.

■ We have said that while some loose expressions in the books to the effect that one is not liable for negligence unless the results of his acts might reasonably have been foreseen by him, the *true doctrine*, as we understand it, is that it is not necessary to a defendant's liability that the consequences of his negligence should have been foreseen. It is sufficient if the injuries are the *natural*, though not the necessary or inevitable, result of the wrong. The test, after all, is, would ordinary prudence have suggested to the person sought to be charged with negligence that his act or omission would *probably* result in injury to someone? Burk v. Creamery Pkg. Mfg. Co., 126 Iowa 730, 734, 102 N.W. 793, 795, 106 Am. St. Rep. 377.

■ We have even said a recovery may be had even though the willful or negligent act of a third person intervenes and contributes to the injury, provided such act should have been foreseen. Dahna v. Clay County Fair Assn., 232 Iowa 984, 6 N.W.2d 843. However, in the latter case we refused to allow the action when the fair association failed to furnish ushers to prevent the patrons from walking on the seats in leaving the amphitheater. We held this failure was not the proximate cause of an injury to a patron who was pushed and injured by another patron under those circumstances.

The key question then appears to be, Was this an apparent situation that required guarding against?

In the case of Dennis v. Merrill, 218 Iowa 1259, 1261, 257 N.W. 322, 323, we said: "If the condition brought about by appellant's negligence did no more than to make the collision possible, the rule for which he contends might apply. But, if the negligence complained of not only brings about a condition under which injuries may result, but *is such that the injuries are the natural result of the negligence,* it would be the proximate cause even though other independent negligence intervened." (Citing Burk v. Creamery Pkg. Mfg. Co., supra.) (Emphasis supplied.)

If we attempt to analyze these cause and effect situations, we note that while it may be foreseen, or it may be a natural result of furnishing an alcoholic beverage to an intoxicated person, that he himself will get hurt, it is not at all clear that

he will naturally assault someone, drive a car and injure or kill another, or do some other tortious act. It is possible, but it is open to debate, that such results are probable. This would seem even more clear where another's negligence intervenes, such as a third party's asking the intoxicated person for a ride in his automobile, or furnishing the intoxicated one an automobile. Such result would scarcely be a natural result of the tavern keeper's negligence. On the contrary, in the latter circumstance we decided one who furnishes an intoxicated person a car was guilty of negligence which was the proximate cause of injury to another, under the common law. Krausnick v. Haegg Roofing Co., 236 Iowa 985, 988, 20 N.W.2d 432, 434, 163 A. L. R. 1413. We said there that the liability rests "upon the combined negligence of the owner and the driver, the owner's negligence consisting in the act of loaning the car to an incompetent driver and the latter's negligence in its operation." While no previous Iowa case had gone that far or supported that theory, we said it seems to be well established as a common-law proposition and effective unless abrogated by statute. Defendants contend that case defines the limits this court can go under the common law of torts—that to extend liability further requires statutory authority.

On the other hand, plaintiffs point to these cases and ask us to hold that when the legislature excluded four per cent beer from the Dram Shop law it left common-law rules effective and those rules construed under modern conditions should afford relief for the injured parties. They would have us go one step further than any previous case in Iowa or elsewhere and hold that it is actionable negligence to furnish legal beer to an intoxicated person and that the natural consequences of that negligence are the negligent driving of an automobile and the resultant injury or death of another.

They argue the common use of automobiles by all qualified persons is so well known that when one leaves a tavern, it is probable that he will drive a car, operate it in a negligent manner, and injure a third person.

Citing Pratt v. Daly, 55 Ariz. 535, 104 P.2d 147, 130 A. L. R. 341, and annotations at 130 A. L. R. 352, where these propositions are discussed, plaintiffs want us to go a step fur-

368

ther and to lead the way into the "wide blue yonder." This, of course, we cannot do. We can see how negligence in selling liquor to a habitual drunkard, after being warned not to do so, which resulted in the death of the consumer, would be a natural result and could be found the proximate cause of the fatality. Pratt v. Daly, supra. It is true, nothing good can be expected of an intoxicated person. But to go further and call any negligent act an intoxicated person may do, after leaving a tavern, the proximate cause or the probable cause of an injury resulting from the sale of the beverage, is, as almost all courts have said, too remote. The extension of this broad coverage is more in the nature of a penalty or assumption of all liability. Thus, it is in the field of legislative discretion, and we should stay out of that field. Furthermore, it is one in which the general assembly is quite familiar and has considered often.

III. The common law as known in this state did not recognize a tort liability arising out of a sale of intoxicating beverages. The general rule we originally followed is stated in 30 Am. Jur. 573, section 607. It states:

"The common law gives no remedy for injury or death following the mere sale of liquor to the ordinary man, either on the theory that it is a direct wrong or on the ground that it is negligence, which imposes a legal liability on the seller for damages resulting from the intoxication."

It is pointed out therein that as a result of this general conclusion by the courts of this country, a number of jurisdictions, including Iowa, have adopted statutes creating a right of action under specified conditions against persons furnishing intoxicants, as well as prescribing the remedy. Such legislation was thought necessary in Iowa since 1873, indicating a strong belief that the common-law remedy was inadequate under the old rules.

Plaintiffs, with commendable frankness in their brief, recognize that most authorities have made such announcements as to the common-law rule, but contend vigorously that such decisions are not based on clear and satisfactory reasoning or the proper application of old rules to such situations. It is argued that it may be that the *consumption* by a normal person is the proximate cause of any subsequent injury to a third

person by reason of the intoxication rather than the *sale* of the liquor. However, where such sale or gift is made to one intoxicated, or otherwise incompetent, and the incapacity of the consumer's will is known to the vendor, or should be known, he should foresee that the natural and probable consequences of the negligent act in selling that intoxicant would be injury to someone. Plaintiffs argue such natural and probable consequences here would be the driving of an automobile and the accident and injury to Ernest Cowman, Jr. In other words, they contend there was here actionable negligence on the part of defendants which was the proximate cause of the death of Ernest Cowman, Jr., recognized under the old rules of common law applied to new conditions. Conceding for the moment that such a gift or sale of legal four per cent beer to an incompetent would be a negligent act, we are not convinced that it was sufficient to constitute proximate cause or a cause which, unbroken by any intervening independent agency, naturally produced a given result.

While it may not be important here, it is to be noted that there is no allegation charging defendants with knowledge of Vohl's condition. It is alleged in Count VI that defendants provided him with beer after he was intoxicated. Whether or not such intoxication was such as to destroy his will and place him in the class of non compos mentis, or insane, does not appear. However, in view of the dismissal of the action on motion, we must and do read the allegations in a light most favorable to plaintiffs. If we give plaintiffs the benefit of all doubt, and if we consider that they have alleged negligent acts by the tavern owners, we are still left in the uncharted sea of how far this negligence is legally recognizable as a proximate cause of the injury.

We have been cited no cases in Iowa squarely upon this issue. In the few cases we have found in other jurisdictions, or that were cited to us considering similar contentions, the courts have in every ·case denied recovery under the common law. They have, without exception, determined that the injury or death of a third person due to negligent actions by the consumer of liquor was too remote to be a proximate cause of

the negligent act of selling intoxicating liquor to an incompetent.

Perhaps the case of Seibel v. Leach, 233 Wis. 66, 67, 68, 288 N.W. 774, 775, is one of the cases most cited on the question before us. There a person, while intoxicated, drove his car against plaintiff's car injuring the plaintiff. The action for personal injuries and property damages was brought against the tavern keeper who sold intoxicants to the driver. From orders sustaining demurrers by defendants, plaintiff appealed. The Supreme Court held the injury to plaintiff was the result of an act of the driver, and the responsibility for that act under the law was not visited upon the tavern keeper or his surety. While it is not clear whether the consumer was intoxicated at the time of the sale, the court acknowledged the rule that "Under the common law it is not an actionable wrong either to sell or to give intoxicating liquors to an able-bodied man." Reference is made therein to the often-cited case of Dunlap v. Wagner, 85 Ind. 529, 44 Am. Rep. 42, which held an unlicensed dealer liable for the death of a horse resulting from a runaway when the driver, helplessly intoxicated by liquor furnished by the dealer, attempted to drive home. It pointed out the Indiana court said, under the circumstance where the tavern keeper placed the intoxicated man in his buggy, that he " 'may well be deemed guilty of an actionable wrong independently of any statute. But we have a statute which provides that every person shall have a right of action for an injury resulting to person or property against one who shall, by selling intoxicating liquors to another, have caused the intoxication of the person by, or through whom, the injury is done.' "

It may be observed that negligence in placing the intoxicated party in the rig might well be the proximate cause, rather than the selling of intoxicants. Krausnick v. Haegg Roofing Co., supra.

It was pointed out that no civil damage statute appears in Wisconsin, and that in the Demge v. Feierstein case, 222 Wis. 199, 268 N.W. 210, 212, it was stated that in view of the well-recognized common-law rules, jurisdictions favoring the creation of such liability, through their legislatures, had enacted civil damage laws covering the situations desired. The court

then based its decision on the conclusion that the common law holds only the man who drank the liquor liable, and considers the act of selling it as too remote to be the proximate cause of an injury caused by the negligent act of the purchaser of the drink.

Another recent case of State for Use of Joyce v. Hatfield (1951) 197 Md. 249, 78 A.2d 754, considered the same question and reviews a similar contention. There the defendant sold intoxicating liquors to a motorist, who left the tavern in an intoxicated condition, drove his auto at an excessive speed and collided with plaintiff's intestate. The Supreme Court of Maryland held there was no cause of action stated against defendant for selling the liquor or for causing the intoxication of the driver whose negligence or willful, wrong act caused the death of plaintiff's intestate. The circumstances were similar to the case at bar, with the exception that in the Maryland case the tavern was in the country, accessible mainly by automobile, so that the tavern owner might reasonably expect his customers would drive home.

There, also, no allegation appeared that defendant knew the driver, or none of his crowd, was in an unfit condition to drive, or that defendant intended to drive. A demurrer was sustained on the ground that the proximate cause of the collision was not the unlawful sale of liquor to the minor, but the negligence of the minor who drank the liquor. The court reviewed many previous decisions and cites many authorities and came to the conclusion that "No case, English or American, has been cited, and we have found none, in which (apart from statute) a seller of intoxicating liquor has been held liable for a tort of the buyer who drank the liquor." (Page 254 of 197 Md., page 756 of 78 A.2d.) It recognized that courts may in proper instances apply old rules to newly-created conditions, but reasoned they cannot create new rules for conditions already under regulation. The Seibel v. Leach case, supra, 233 Wis. 66, 67, 68, 288 N.W. 774, was among those cited for the authority that the common-law rule holds the man who drank the liquor liable and considers the act of selling it too remote to be a proximate cause of an injury caused by the negligent act of the purchaser of the drink.

The court's conclusion (page 256 of 197 Md., page 757 of 78 A.2d) that "plaintiff argues, earnestly but futilely, that the cases were all wrongly decided, that the common law was not, and is not, as the cases say it is, that the cases are not supported by reason and have acquired no force as authority by repetition and adoption in one jurisdiction after another, * * *" sounds familiar.

But we are not as pessimistic as the Maryland court in stating that it would be worse than futile for us to attempt to convince plaintiffs by reason, when all other courts have failed and the accumulated mass of authority carries no weight.

While we believe the legislature of Iowa has entered this field and, wisely or not, has recognized the need for civil damage legislation only in cases where intoxicating liquor, as defined by it, has been served, yet in order to give plaintiffs the benefit of the doubt, we have tried to review the basis of denial of liability under the common law, as well as cite all recent pronouncements on the subject. Perhaps the belief that the consequences are too remote or unforeseeable will not satisfy plaintiffs, but we can see no end to the possibilities, or contentions, if it were held otherwise. Judicial limits are hard to extend without usurping legislative functions, especially when they pertain to substantive rights.

We should refer to one more case which seems to review all the recent and leading cases on this subject. Cole v. Rush (1955) 45 Cal.2d 345, 356, 289 P.2d 450, 457, 54 A. L. R.2d 1137, contains reasoning on both sides of this controversy, with five Justices rejecting liability and one dissenting Justice for recovery. Cases cited both by plaintiffs and defendants, including Pratt v. Daly, supra, were carefully analyzed as to reasoning and logic. Space will not permit an extended discussion of these views, but the conclusion is of interest. The California court concluded: "* * * it is established both by the common law and by the decisional law in this state (1) that as to a competent person it is the voluntary consumption, not the sale or gift, of intoxicating liquor which is the proximate cause of injury from its use; * * *."

In Fleckner v. Dionne, 94 Cal. App.2d 246, 210 P.2d 530, referred to in the Cole v. Rush case, supra, there was an allega-

tion that the tavern keeper knew the consumer was a minor and sold intoxicating liquor to him while he was already under the "severe influence of intoxicating liquors", knew that he had an automobile on or near the premises, that he would thereafter attempt to drive it, and in his condition could and would harm someone on the highway. A demurrer was sustained and, on failure to amend, judgment was entered against plaintiff. The California court, therefore, joins those jurisdictions committed to the principle that relief for those injured by intoxicated persons must look to the legislature for special civil damage rights if they wish to hold liable one who sells the liquor. That court's decision was also based on the belief that such cause is too remote to be included as a proximate cause of the injury or damage.

Whether or not we would go so far need not now be decided. The only allegation here is that defendants furnished legal beer to Vohl before and after he became intoxicated. While it may be, under certain conditions, negligence to serve any beverage containing alcohol to one not sound of mind, with knowledge of that condition or disability, actual or constructive, it is clear such negligent act is but one element that would be necessary for recovery under the common law. It must also be a proximate cause of the injury in order to permit recovery under the common law.

We are satisfied that a natural result of such a sale or gift of legal beer was not that the vendee would depart, drive a car, operate it in a negligent or reckless manner and thereby injure or kill someone. We must, therefore, hold that furnishing legal beer to Vohl was too remote to be held a proximate cause of the injury or damage. Extension of civil rights to cover such cases must be by action of the legislature, which has well and often considered such rights in this state. The judgment is affirmed.— Affirmed.

All JUSTICES concur.