MASON, ADMR., APPELLANT, *v.* ROBERTS; TESTER, APPELLEE.

[Cite as Mason v. Roberts (1971), 35 Ohio App. 2d 29.]

30

*Messrs. Mason, Mason & Fridline*, for appellant.
*Mr. G. P. Gongwer* and *Mr. Phillip H. Shafer*, for appellee.

PUTMAN, J. This appeal poses two central questions:

1. Is a motion for a summary judgment filed by a defendant "supported," as provided for in Civil Rule 56(E), by affidavits which, if true, neither negate any essential element of plaintiff's case, nor constitute a legally sufficient affirmative defense to or immunity from the claim of the petition.

2. Has the enactment of R. C. 4399.01 created an immunity from civil liability in all cases not covered therein.

This is an appeal from a summary judgment rendered in favor of defendant Dorothy Tester, dba Corner Bar.

Plaintiff, the administrator of the estate of Paul L. Sparr, deceased, commenced this wrongful death action against the defendants, Roger Lee Roberts and Dorothy Tester, dba Corner Bar, by the filing of a petition alleging that he is a qualified and acting administrator of the estate of Paul L. Sparr, deceased, and that Dorothy Tester is duly licensed to operate, at all times mentioned, a tavern at 136 East Main Street, Ashland, Ohio, where certain intoxicating liquors consisting of beer and wine were permitted by law to be sold to and consumed by the general public, subject to all the rules, regulations and laws of the state of Ohio relating to such a business operation.

Plaintiff further alleged that on October 24, 1969, in mid-afternoon, Roger Lee Roberts entered said Corner Bar and proceeded to drink and consume intoxicating liquors sold to him and dispensed to him by said defendant, Dorothy Tester, her agents, servants and employees; that during the course of said day and the ensuing evening

said defendant, Roger Lee Roberts, became intoxicated from said intoxicating liquors so served by the defendant, Dorothy Tester, her agents and employees and after said Roger Lee Roberts became intoxicated, said defendant Dorothy Tester, her agents and employees continued to sell and dispense additional intoxicating liquors to said Roger Lee Roberts until approximately 1 a. m. on October 25, 1969; that the defendant, Dorothy Tester, was and is the aunt of said defendant and she, her agents, servants and employees knew or should have known that said Roger Lee Roberts when intoxicated became violent and abusive and disorderly and also, became dangerous to the physical and mental welfare of others; and that said Dorothy Tester, defendant, her agents, employees and servants knew or had reason to believe that said defendant had become intoxicated while drinking intoxicating liquor in said Corner Bar and yet said defendant Dorothy Tester, her agents, employees and servants continued to serve intoxicating liquors to said defendant, Roger Lee Roberts.

Plaintiff, also alleged that in continuing to serve the defendant, Dorothy Tester, her agents and servants and employees violated R. C. 4301.22 (B) and R. C. 4301.22 (C) by selling intoxicating liquors to an intoxicated person and by selling intoxicating liquors to an individual who habitually drinks intoxicating liquor to excess and that as a direct and proximate result of the aforesaid sales of intoxicating liquors to the defendant, Roger Lee Roberts, by the defendant, Dorothy Tester, her agents, employees and servants, said Roger Lee Roberts became disorderly and in a drunken condition and while in said condition he followed plaintiff's decedent out of said Corner Bar at approximately 1 a. m. and violently and forcefully assaulted plaintiff's decedent, knocking him to the ground and causing him injuries from which he died on the 30th day of October, 1969.

Defendant Dorothy Tester filed a separate answer to the petition, admitting that, as alleged, she was at all times mentioned duly licensed to operate and did operate, at such times, the Corner Bar where intoxicating liquors were

permitted by law to be sold to and consumed by the general public, and that she was the aunt of Roger Lee Roberts.

Defendant Tester denied each and every other allegation and statement contained in the petition.

Defendant Tester then moved for a summary judgment in her favor and, with such motion, filed an affidavit that at all relevant times she was licensed by the state of Ohio, department of liquor control, under permanent permit No. 8855488, and that at no time had she ever received any order or been notified either orally or in writing or had any knowledge regarding the issuance or existence of any order made by the state of Ohio, department of liquor control, prohibiting her from giving away or selling liquor to Roger Lee Roberts, a defendant in the within action, as such order is contemplated by the applicable provisions of R. C. 4399.01 and R. C. 4301.22 (C).

A certificate was also filed by Donald D. Cook, director of the department of liquor control, state of Ohio, under authority of R. C. 121.20 and R. C. 4301.10 stating that a check of the records of the department of liquor control indicated that Roger Lee Roberts of Ashland, Ohio, does not now, nor has his name ever appeared on any blacklist of the department, pursuant to R. C. 4301.22 (C).

The motion for summary judgment was filed on July 29, 1970. Plaintiff made no further response to such motion by affidavit or otherwise, as provided for in Civil Rule 56, effective July 1, 1970.

The Court of Common Pleas rendered a summary judgment in favor of defendant Dorothy Tester from which plaintiff has filed this appeal.

We turn now to the consideration of the Ohio statutes. R. C. 4399.01 provides:

"A husband, wife, child, parent, guardian, employer, or other person injured in person, property, or means of support by an intoxicated person, or in consequence of the intoxication, habitual or otherwise, of a person, after the issuance and during the existence of the order of the department of liquor control prohibiting the sale of intoxicat-

ing liquor as defined in section 4301.01 of the Revised Code to such person, has a right of action in his own name, severally or jointly, against any person selling or giving intoxicating liquors which cause such intoxication, in whole or in part, of such person.''

R. C. 4399.08, relative to a violation of the provisions of R. C. 4399.01, reads:

"A suit for damages under sections 4399.01 to 4399.08, inclusive, of the Revised Code, shall be by a civil action in any court having jurisdiction thereof.''

In a separate chapter of Title 43, R. C. 4301.22 provides:

''(B) No sales shall be made to an intoxicated person.

''(C) No intoxicating liquor shall be sold to any individual who habitually drinks intoxicating liquor to excess, or to whom the department has, after investigation, determined to prohibit the sale of such intoxicating liquor, because of cause shown by the husband, wife, father, mother, brother, sister, or other person dependent upon, or in charge of such individual, or by the mayor of any municipal corporation, or a township trustee of any township in which the individual resides. The order of the department in such case shall remain in effect until revoked by the department.''

Under the Ohio statute, when a sale is made to a person who has been blacklisted under the provisions of R. C. 4301.22 (C), the person injured in person, property or means of support by the intoxicated person, in consequence of the intoxication during the existence of the blacklisting, has a right of action against the person selling or giving liquor which causes such intoxication, in whole or in part, of such person, as provided by R. C. 4399.01 (Ohio Dramshop Act), and R. C. 4399.08, which specifically authorizes a civil action for the recovery of damages under R. C. 4399.-01. Such an authorized action relates solely to the prohibition against sales to a blacklisted person, in violation of the provisions of R. C. 4399.01. It makes no provision for the bringing of a civil action for damages proximately caused by sales to a person who has not been blacklisted but to

whom sales are made in violation of the provisions of R. C. 4301.22 (B) and (C) which prohibit sales to an intoxicated person and to individuals who habitually drink intoxicating liquor to excess.

Clearly, the provisions of R. C. 4301.22 (B) and (C) impose a duty upon vendors not to sell beer and intoxicating liquor to an intoxicated person or to an individual who habitually drinks intoxicating liquor to excess. A violation of a duty imposed by statute is a basis upon which negligence is founded and normally liability arises from such negligence to the extent that it is the proximate cause of damage.

Vendors of alcoholic beverages are licensed by the state of Ohio, as are operators of motor vehicles. The license in either case is a permit. The sale of alcoholic beverages is controlled by statute in the same general sense that the operation of motor vehicles is controlled by statute. When a licensed driver is negligent by violating a regulatory statute relating to the operation of the automobile, civil liability is imposed for such violation absent a specific provision providing for such liability.

To avoid the compelling social policy supporting liability for the *negligence* of a licensed vendor, resulting from a breach of the duties imposed upon him in R. C. 4301.22 (B) and (C) defendant argues that because the legislature provided specifically under R. C. 4399.08 for an action for damages under R. C. 4399.01 and made no such provision in the case of sales made in violation of R. C. 4301.22 (B) and (C), absent blacklisting, that the legislature intended no further "civil liability" other than that specifically provided for in R. C. 4399.08 for blacklisting cases under R. C. 4399.01.

His argument depends upon a play on words and is a *non sequitur*. Liability without fault or strict liability is imposed in the case of sales to "blacklisted" persons by R. C. 4399.01 and is provided for in R. C. 4399.08. The only logical conclusion which flows from the failure to include R. C. 4301.22 (B) and (C) in the suits authorized in R. C. 4399.08 is that it was not intended to impose liability without fault

or strict liability in cases arising under R. C. 4301.22 (B) and (C). It is well settled in Ohio that the breach of a safety statute is negligence per se.

It would appear reasonable that the legislature was content that the courts handle 4301.22 (B) and (C) cases as negligence per se and to impose strict liability for sales to blacklisted persons.

The fallacy of the proposition that there is no liability apart from the blacklisting under R. C. 4399.01 is that such statute imposes upon the pre-existing common law liability for intentional and negligent conduct an accountability known as liability without fault or strict liability, in a specifically defined narrow class of cases; i. e., "blacklisting" cases.

No Ohio case holds that this statute offers immunity to one who knowingly and intentionally sells intoxicants to a person known to him to be physically dangerous to others when such person is drunk. Such conduct is an intentional invasion of the legally protected interest of the public to be free from the intentional loosing upon the community of physical violence. Such conduct is not the mere want of ordinary care or negligence, but is an intentional violation of a substantial socially important legally protected interest at common law.

For this reason, an analysis of the common law respecting the liabilities of a vendor of intoxicating liquors for negligent sales does not reach all claims of the petition.

For example, Professor William L. Prosser in his classic text book "Law of Torts" (3rd ed. 1964) deals with "dram shop acts" and "blacklisting statutes" under his chapter on "strict liability." There, discussing the social policy that the economic burden of certain hazards should fall upon those in a better position to shift then to the public by reason of prices and insurance, he says, at page 542:

"The sale of goods involving a considerable risk to the public has been dealt with in much the same manner. Many of the pure food acts make the seller of defective food

liable to the injured consumer, *even though he has used all reasonable care.* Dram Shop or Civil Liability Acts in some fourteen states impose strict liability, without negligence, upon the seller of intoxicating liquors, when the sale results in harm to the interests of a third person because of the intoxication of the buyer. These statutes, which have been held constitutional, and *are liberally construed,* protect the third party not only against *injuries directly resulting* from affirmative acts of the intoxicated man, *such as assault and battery,* but also against the loss of family support due to injuries to the man himself, including those inflicted upon him in self defense by those whom he has attacked.'' (Emphasis added.)

The Supreme Court of Ohio in the case of *Robinson* v. *Stilgenbauer* (1968), 14 Ohio St. 2d 165, from this district, affirmed a summary judgment in a liquor sale case because the record would not support a *negligence* action against the tavern keeper even if one were to assume such an action existed under Ohio law, saying, at page 167:

''Hence, we do not reach the question of law that we believed was involved in this case at the time we allowed the motion to certify, *i. e.,* whether there may be in this state a cause of action against a liquor vendor for damages proximately resulting from his negligent sale of intoxicating beverages to a known habitual drunkard. See *Rappaport* v. *Nichols* (1959), 31 N. J. 188, 156 A. 2d 1, 75 A. L. R. 2d 821; *Farmers Mutual Auto Ins. Co.* v. *Gast* (1962), 17 Wis. 2d 344, 117 N. W. 2d 347; *Elder* v. *Fisher* (Ind. 1966), 217 N. E. 2d 847; *Jardine* v. *Upper Darby Lodge* (1964), 413 Pa. 626, 198 A. 2d 550; *Ramsey* v. *Antcil* (1965), 106 N. H. 375, 211 A. 2d 900; and 9 Cleveland Marshall Law Review 302 (1962). Therefore, we express no opinion on that question of law.''

It is one thing to debate whether an action for the negligent sale of intoxicating liquor exists in this state. But it is an entirely different proposition to assert that no action lies for an intentional sale to a known dangerous drunk.

A general analysis of cases dealing with the broad question of when courts impose that which is referred to broadly and with apparently deliberate imprecision as "civil liability" (a term which has meaning only to distinguish the action from criminal proceedings) permits the commentator to avoid the question: civil liability based upon what? Intentional conduct? Negligence? Liability without fault?

The common law liability of a seller of intoxicants for *wilful* sales which injure third persons is well settled.

In the second headnote of *Pratt* v. *Daly* (1940), 55 Ariz. 535, 104 P. 2d 147 reported in 130 A. L. R. 341, the following appears:

"While the mere sale of intoxicating liquor to a husband or wife, the consumption of which by the purchaser creates a situation which results in financial injury to the other spouse, does not give rise to an action for damages, such sale is actionable where, to the sellers knowledge, the purchasers will to refrain is so impaired that it is not possible for him to refrain from drinking the liquor when it is placed before him."

In the *Pratt* case, the Arizona court relied upon the reasoning of the Supreme Court of Ohio in *Flandermeyer* v. *Cooper* (1912), 85 Ohio St. 327, which involved the intentional sale of morphine to one known to be so weak in mind as to be unable to refuse it.

In the annotation to 130 A. L. R. 341, at pages 357 and 358, the annotator cites *Swanson* v. *Ball* (1940), 67 S. D. 161, 290 N. W. 482, dealing with the wilful sale of intoxicating liquor to one known to be habitually addicted to drink, as standing with *Pratt* v. *Daly, supra,* for the following general rule, found at page 357:

"While it is true that ordinarily a vendor of intoxicating liquors is not, at common law, answerable to a third person for injury or damage sustained by the latter as a result of the intoxication of the purchaser of the liquor, nevertheless it is established that in some circumstances a vendor's sale of liquor may constitute a wilful violation of his duty to one other than the consumer thereof and be

the proximate cause of the injury sustained by such third person, so that for such injury the latter may have a right of action at common law against the vendor.''

At page 358, it is stated:

''These cases appear to be the only ones squarely deciding the question. Other cases that might be considered as contra would seem to be distinguishable.''

At the top of the list of distinguishable cases is *Demge* v. *Feierstein* (1936), 22 Wis. 199, 268 N. W. 210. *Demge* is the case which the 1970 Wisconsin Supreme Court said controlled its decision in *Garcia* v. *Hargrove* (1970), 46 Wis. 2d 724, 176 N. W. 2d 566. *Garcia* was decided upon a demurrer to a petition based upon negligence in which the court observed the plaintiff's claim to be the following:

''* * * [A]s a direct and proximate result of the above described negligence of the defendant, the plaintiff sustained serious personal injuries. No claim is made that any criminal statute applies to the facts in this case.'' (46 Wisc. 2d 726, 176 N. W. 2d at 566.)

Continuing with the observations of the Wisconsin Court in *Garcia* v. *Hargrove*, the court acknowledged, at 729, 176 N. W. 2d at 568, that even in negligent sale cases:

''Whatever choice we make for Wisconsin is supportable by case authority elsewhere. *See* 75 A. L. R. 2d 833, 73-78 A. L. R. 2d Later Case Service (1968).''

Following the direction of the Wisconsin court, we look at 75 A. L. R. 2d 833 and find restated there, at 837 (as in 130 A. L. R. 352), that the general rule of non-liability for a negligent sale is subject to the following ''limitation, qualification and exception'':

''Although ordinarily a vendor of intoxicating liquors is not, at common law, answerable to a third person for injury or damage sustained by the latter as a result of the intoxication of the purchaser of the liquor * * * nevertheless it is established that in some circumstances a vendor's sale may constitute a wilful violation of his duty to one other than the consumer thereof and be the proximate cause of the injury sustained by such third person, so that

for such injury the latter may have a right of action at common law against the vendor.''

Arizona—See *Collier* v. *Stamatis* (1945), 63 Ariz. 285, 162 P. 2d 125.

Michigan—*Waynick* v. *Chicago's Last Dept. Store* (C. A. 7, 1959), 269 F. 2d 322, certiorari denied 362 U. S. 903, 4 L. Ed. 2d 544, 80 S. Ct. 611 (applying Michigan law).

New Jersey—*Rappaport* v. *Nichols* (1959), 31 N. J. 188, 156 A 2d 1, 75 A. L. R. 2d 821.

The case of *Davis* v. *Shiappacossee* (Fla. 1963), 155 So. 2d 365 involved the sale of beer and whisky to minors seated in an automobile, which was analogized by the court as a dangerous instrumentality, as contrasted with the establishment of an overall liability imposed upon purveyors of intoxicants.

We find the reason and spirit of cases such as the above and *Flandermeyer* v. *Cooper* (1912), 85 Ohio St. 327 to constitute an Ohio common law rule of liability attaching to the intentional sale of intoxicants with knowledge of the facts described in the petition at bar.

The petition construed most favorably for plaintiff alleged not only a negligent sale of intoxicants, but specifically, that the seller intentionally sold intoxicants to her nephew whom she knew physically assaulted others when he was drunk, and that as a result of such sale her nephew became intoxicated and caused the death of plaintiff's decedent by violently assaulting him outside her tavern—the precise sort of thing she knew her nephew did when he got drunk.

Intentional misconduct of this sort was always actionable at common law.

The manifest purpose of the so-called blacklisting statutes was to increase public protection by imposing absolute or strict liability in those cases. It defeats the real purpose of the enactment of the black listing statute to twist it into an immunity bath for all other cases.

Statutes enacted to promote the public safety should be liberally construed to give effect to that purpose.

We move now to the summary judgment procedural aspect of this case.

Rule 56 (E) of the Ohio Rules of Civil Procedure, effective July 1, 1970, with reference to summary judgment provides, in pertinent part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Defendant claims the judgment in his favor should stand because plaintiff filed no counter affidavits.

This argument is founded upon the notion that a complaint, sufficient to state a cause of action upon its face, may nevertheless be mortally wounded if undefended against an assault of irrelevancies.

We hold that affidavits as to irrelevant facts do not, under Rule 56(E) support a summary judgment motion, require counter affidavits, or render the summary judgment for defendant "appropriate" as that word is used in the last sentence of the rule.

See *Landers* v. *Mays* (1963), 118 Ohio App. 1, holding that the failure of a plaintiff to file an affidavit opposing a defendant's affidavit in support of his motion for a summary judgment is not conclusive of the defendant's right to a summary judgment, which should issue only "if appropriate."

See, also, *Bowlds* v. *Smith* (1961), 114 Ohio App. 21, holding that the statutory procedure for summary judgment on the granting of a motion is not intended as a test of the sufficiency of the pleadings or to supplant a demurrer.

In effect, the defendant at bar demurred to the petition for a failure affirmatively to plead "blacklisting."

We hold there are fact situations not included within the scope of R. C. 4399.01 in which a purveyor of intoxicants can be civilly liable for damages to third persons

caused by a sale; that where a complaint states such a valid cause of action with no reference to R. C. 4399.01 or the blacklisting referred to therein, such a complaint is good as against a motion to dismiss; and that a defendant cannot have a summary judgment against such a petition simply by filing affidavits negating the existence of facts giving rise to the liability without fault imposed by R. C. 4399.01, notwithstanding that the plaintiff has filed no counter affidavits.

In this case, the only "support" the defendant gave his motion for summary judgment was to establish, by affidavit, the absence of the "blacklisting" provided for in R. C. 4399.01. Affidavits as to irrelevant facts do not "support" a summary judgment motion under Civil R. 56 (E).

In summary, we hold that a complaint which states facts sufficient to show a cause of action upon its face, but which is not supported by affidavits as to those facts, must stand against a defendant's motion for summary judgment that is accompanied by affidavits as to facts which neither negate an essential element of the plaintiff's cause, nor establish any affirmative defense or immunity against liability.

A seller of intoxicating liquors who intentionally sells liquor to a person known to him to be physically violent to others when drunk is liable in damages when the sale proximately results in harm to the interests of a third person because of the intoxication of the buyer.

This liability exists independently of the liability without fault imposed by R. C. 4399.01.

Where a defendant "supports" his motion for a summary judgment by affidavits which serve solely to negate only one fact and the presence of such fact is not essential to the plaintiff's case or its absence a sufficient affirmative defense or immunity in law, the defendant is not entitled to a summary judgment.

It has been urged that two appellate cases in this state, *Love* v. *Fountas* (1963), 119 Ohio App. 501 and *Ramon* v. *Spike* (1951), 92 Ohio App. 49, are authority for the proposition that R. C. 4399.01 effectively grants total

civil immunity in all cases not within its terms. Neither case involved an allegation of an intentional sale to a known physically dangerous drunk, or a willful sale of any type. Therefore, the holdings in those cases are not precedent for the facts at bar and we distinguish them on this basis. For this reason we do not certify our judgment to be in conflict with those judgments.

Therefore, we state pursuant to paragraph three of the syllabus of *North* v. *Penn. Rd. Co.* (1967), 9 Ohio St. 2d 169, that a genuine dispute exists with respect to all allegations of the complaint not affirmatively admitted to be true by the answer, and the judgment entry shall affirmatively set forth this statement.

The judgment of the lower court is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

Van Nostran, J., concurs.
Rutherford, P. J., dissents.

Rutherford, P. J., dissenting. The motion for summary judgment was filed on July 29, 1970. Affidavits, as set forth in the majority opinion were filed by the defendant, who moved for the summary judgment. Plaintiff made no response to the motion for summary judgment by affidavit or otherwise, as provided for in Rule 56 of the Rules of Civil Procedure, effective July 1, 1970.

The common pleas court rendered summary judgment in favor of defendant Dorothy Tester from which judgment plaintiff has filed this appeal.

Ordinarily, a vendor of intoxicating liquors is not, at common law, answerable to a third person for injury or damage sustained by the latter as a result of the intoxication of the purchaser of the liquor. See annotation 75 A. L. R. 2d 833 at page 835, for the general rule denying a cause of action and the cases cited thereunder. Also, see, annotation 130 A. L. R. 452. Such common law rule remains unaltered until changed by court decision or legislative en-

actment. Courts generally, absent a legislative enactment, have refused to alter the common law by court decision so as to give rise to a cause of action against the seller of liquor to an intoxicated person. See *Garcia* v. *Hargrove* (1970), 46 Wis. 2d 724, 176 N. W. 2d 566 where the Supreme Court of Wisconsin, in the absence of any legislative act, held that the sale of liquor to an intoxicated person does not give rise to an action for negligence under Wisconsin law. Although the Wisconsin Supreme Court recognized that the common law rule does not mean that the court is unable to change the law when it no longer meets the economical or social needs of society, that court refused to alter such law by court action in the absence of legislation.

In *Meade* v. *Freeman* (1969), 93 Idaho 389, 462 P. 2d 54, the Supreme Court of Idaho went further than did the Supreme Court of Wisconsin and held that, the sale of liquor to a person while he is intoxicated, in violation of a criminal statute gives no cause of action against the vendor by the person sustaining injury absent a dram shop act to impose civil liability. The courts holding was that the common law rule—that the sale of intoxicants to an intoxicated person is not the proximate cause of damage to a third person through a tortious or unlawful act of the consumer is not changed by statutes controlling the sale of intoxicants or by wrongful death statutes, absent a statutory provision fixing civil liability for the sale to an intoxicated person in violation of a criminal statute.

Michigan and Illinois have dram shop acts. However, in the case of *Waynick* v. *Chicago's Last Department Store* (C. A. 7, 1959), 269 F. 2d 322 the United States Court of Appeals held, in a diversity action for damages sustained by the plaintiffs when the automobile in which they were riding collided in Michigan with another automobile, that the dram shop act was not applicable extraterritorily to a situation where the sale of intoxicating liquor takes place in Illinois and the injury therefrom occurred in another state. Likewise, that the Michigan liquor control acts probably have no applicability where the sale of intoxicating liquor in Illinois produced injury in Michigan.

The court thus avoided limitations of liability otherwise applicable in Illinois and Michigan because of dram shop acts. The seventh circuit court having first, for the reason stated, found no legislative enactments which were applicable to control civil liability, applied principles applicable generally to common law liability—that every person has a duty to use ordinary care to avoid injury to others from any agency set in operation by him—and then held contrary to such general common law rule. Thus, the court departed from the general common law rule after first determining that under the facts of that particular case there were no applicable statutes.

In the case of *Davis* v. *Shiappacossee* (Fla. 1963), 155 So. 2d 365, the Supreme Court of Florida held that the sale of alcoholic beverages to a minor in violation of a statute constituted negligence per se, and that the automobile accident which occurred while the minor was under the influence of liquor was reasonably foreseeable and the proximate result of such negligence. Florida did not have a "dram shop act" or "civil damage act."

Certainly the common law need not remain static. It arose from court decisions and although courts should be reluctant to depart from rules which have been longstanding it is within their province, *when change has not been controlled by legislative enactment*, to change such law if change is necessary to meet changing conditions of society.

Where there has been a legislative enactment, the courts have generally held that the extent and condition of civil liability are clearly within the power of the creator, the legislature, with the only exception being where injury has resulted from a willful and intentional tort.

See *Cowman* v. *Hansen* (1958), 250 Iowa 358, 92 N. W. 2d 682.

The third headnote of 92 N. W. 2d 682 states:

"The Dram Shop Act is a civil damage act, and its extent and conditions are clearly within power of its creator, the Legislature, which can extend or diminish rights and provide remedy as it sees fit."

In the state of New York, the Legislature has enacted

Section 65 of the Alcoholic Beverage Control Act, which provides:

"No person shall sell, deliver or give away or cause or permit or procure to be sold, delivered or given away any alcoholic beverages to

"1. Any minor, actually or apparently, under the age of eighteen years;

"2. Any intoxicated person or to any person, actually or apparently, under the influence of liquor;

"3. Any habitual drunkard known to be such to the person authorized to dispense any alcoholic beverages. * * *."

In conjunction therewith, Section 11-101 of the General Obligations Law provides in part, as follows:

"1. Any person who shall be injured in person, property, means of support, or otherwise by any intoxicated person, or by reason of the intoxication of any person, whether resulting in his death or not, shall have a right of action against any person who shall, by unlawful selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication; and in any such action such person shall have a right to recover actual and exemplary damages.

"2. In case of the death of either party, the action or right of action given by this section shall survive to or against his or her executor or administrator, and the amount so recovered by either wife or child shall be his or her sole and separate property."

An editorial in the Cleveland Plain Dealer, Cleveland, Ohio, December 5, 1971, relative to the unfitness of motor vehicle drivers, states:

"There is an unusual statistical sidelight. Of the nation's 3808 traffic deaths a half century ago, 780 took place in New York City. Last year, of the country's 54,800 traffic fatalities, only 892 happened in New York, an increase of only 112."

The proposition with which we are confronted is that had the Ohio Legislature intended to impose civil liability for injury caused by the illegal sale of intoxicating liquor as broad as that imposed in New York, and without the

necessity of blacklisting, it would have done so. In the instant case, it is undisputed that the person to whom sales were made was not blacklisted.

We turn now to the consideration of the Ohio statutes. R. C. 4399.01, including the title, reads as follows:

"Action against seller of liquor for injury caused by intoxicated person to whom sale is prohibited.

"A husband, wife, child, parent, guardian, employer, or other person injured in person, property, or means of support by an intoxicated person, or in consequence of the intoxication, habitual or otherwise, of a person, after the issuance and during the existence of the order of the department of liquor control prohibiting the sale of intoxicating liquor as defined in section 4301.01 of the Revised Code to such person, has a right of action in his own name, severally or jointly, against any person selling or giving intoxicating liquors which cause such intoxication, in whole or in part, of such person." (Emphasis added.)

R. C. 4399.08, relative to a violation of the provisions of R. C. 4399.01, reads:

"A suit for damages under sections 4399.01 to 4399.- 08, inclusive, of the Revised Code, shall be by a civil action in any court having jurisdiction thereof."

R. C. 4301.22, which is also a part of Title 43, provides, in part:

"(B) No sales shall be made to an intoxicated person.

"(C) No intoxicating liquor shall be sold to any individual who habitually drinks intoxicating liquor to excess, or to whom the department has, after investigation, determined to prohibit the sale of such intoxicating liquor, because of cause shown by the husband, wife, father, mother, brother, sister, or other person dependent upon, or in charge of such individual, or by the mayor of any municipal corporation, or a township trustee or any township in which the individual resides. The order of the department in such case shall remain in effect until revoked by the department."

Clearly, R. C. 4399.01 relates to sales made to intoxicated persons in violation of R. C. 4301.22 (B) and not

only to sales to any individual who habitually drinks intoxicating liquor to excess in violation of R. C. 4301.22 (C) for in this respect the pertinent part of R. C. 4399.01 reads:

"A * * * or other person injured in person, property, or means of support, *by an intoxicated person, or in consequence of the intoxication, habitual or otherwise * * *.*" (Emphasis added.)

The Ohio legislature has thus altered the common law rule by providing for an "action against [a] seller of liquor for an injury caused by an intoxicated person to whom [the] sale is prohibited" with the conditions upon which such action may be maintained being fixed by the legislature.

Plaintiff contends that even though civil liability was imposed only on persons who have been blacklisted, the legislature did not intend that liability be so limited but intended that there also be civil liability based upon sales to persons who are intoxicated or sales to individuals who habitually drink intoxicating liquor to excess, absent the blacklisting of those persons.

Clearly, the provisions of R. C. 4301.22 (B) and (C) impose a duty upon vendors not to sell beer and intoxicating liquor to an intoxicated person or to an individual who habitually drinks intoxicating liquor to excess. A violation of a duty imposed by statute is a basis upon which negligence is founded and normally liability arises from such negligence to the extent that it is the proximate and foreseeable cause of harm which proximately results therefrom.

Vendors of alcoholic beverages are licensed by the state of Ohio as are operators of motor vehicles. The license in either case is a permit and the sale of alcoholic beverages is controlled by statute in the like manner the operation of a motor vehicle is controlled by statute. When a licensed driver is negligent for violating a regulatory statute relating to the operation of the automobile, civil liability is imposed for such violation, absent a specific provision providing for such liability. Such liability arises, however, not from the fact of intoxication, but from the

respect in which the vehicle is being otherwise unlawfully operated by the intoxicated person, with intoxication being no defense.

I see no difficulty imposing the same reasoning relating to civil liability for the negligence of a licensed vendor in his failure to comply with regulations provided in R. C. 4301.22 (B) and (C), relative to the proximate foreseeable consequences of acts of the person served while intoxicated, except for the absence of a common law liability, coupled with the fact that the legislature has specifically provided for civil liability for damages, but has made no provision for a civil action for damages for the violation of R. C. 4301.22 (B) and (C), absent blacklisting. The statutes indicate that the legislature intended no further civil liability to be imposed upon the vendor other than that specifically provided. Had the legislature so intended, it could have so provided as has been done by the New York legislature in section 11-101, *supra*, which renders unnecessary any blacklisting as required by the Ohio legislature. See *Ramon* v. *Spike* (1951), 92 Ohio App. 49; and *Love* v. *Fountas* (1963), 119 Ohio App. 501.

In *Rappaport* v. *Nichols* (1959), 31 N. J. 188, 156 A. 2d 1, the Supreme Court of New Jersey held a cause of action to arise from the alleged unlawful and negligent sale of alcoholic beverages to a minor which caused intoxication that in turn caused or contributed to his negligent operation of a motor vehicle at the time of a fatal accident. New Jersey had statutes prohibiting sales to minors or to any person actually or apparently intoxicated. The Supreme Court of New Jersey was careful to point out, however, that a prior existing civil damage law had been repealed and that in light of the abandonment of such and its replacement by the alcohol beverage control act, which prohibits sales to minors and intoxicated persons but does not designate any conditions of civil liability, the legislature left unimpaired the fundamental negligence principles prevailing in New Jersey.

As much merit as there is in the reasons for imposing civil liability for negligent sales, I have found no case, including *Rappaport* v. *Nichols, supra,* where civil liability

for negligent sales, beyond that fixed by legislative enactment, has been imposed by a court where there is in existence a dram shop act by which the legislature has made provisions for civil liability.

In *De Villez* v. *Schifano* (1970), 23 Mich. App. 72, 178 N. W. 2d 147, the Court of Appeals of Michigan circumvented the limitations of the Michigan dram shop act in a situation where an assault by a customer to whom the owner of a tavern sold intoxicants occurred inside the tavern. The court held that an action under the dram shop act was not the sole and exclusive remedy to recover from the tavern keeper because, where a tavern owner owes a common law duty to his customers to exercise reasonable care to provide safe premises, an injured person is entitled to proceed on the additional theory that the owner breached a common law duty to exercise reasonable care to provide safe premises.

The reasoning for the refusal of courts to intervene where the legislature has acted has been that, under the constitutional principle of separation of powers, courts should not make law in an area where the legislature has acted and has, by legislative enactment, determined the extent to which the common law rule of no liability should be modified. However, it still remains difficult to explain why the legislature, which has provided that vendors must be licensed because the operation of their business is a privilege rather than a right has not, by legislative action, imposed upon them the same degree of liability for the negligent and unlawful acts of selling alcoholic beverages to minors or intoxicated persons as is generally imposed upon other persons for negligent and unlawful acts in other respects. There is no legal impediment to such action as that which exists with regard to actions by courts in areas pre-empted by the legislature.

The majority opinion makes reference to willful and intentional tortious acts and cites 75 A. L. R. 2d 833, wherein it is stated that the common law general rule of no liability for a negligent sale is subject to the "limitation, qualification and exception" that in some circumstances a

sale by the vendor may constitute a *willful violation* of his duty to one other than the consumer and be the proximate cause of the injury sustained by a third person, so that for such injury the latter may have a right of action against the vendor.

From the majority opinion, I quote as follows:

"No Ohio case holds that this statute offers immunity to one who knowingly and intentionally sells intoxicants to a person known to him to be physically dangerous to others when such person is drunk. Such conduct is an intentional invasion of the legally protected interest of the public to be free from the intentional loosing upon the community of physical violence. Such conduct is not the mere want of ordinary care or negligence, but is an intentional violation of a substantial socially important legally protected interest at common law.

"For this reason, an analysis of the common law respecting the liabilities of a vendor of intoxicating liquors for negligent sales does not reach all claims of the petition."

"The petition construed most favorably for plaintiff alleged not only a negligent sale of intoxicants but, specifically, that the seller intentionally sold intoxicants to her nephew whom she knew physically assaulted others when he was drunk, and that as a result of such sale her nephew became intoxicated and caused the death of plaintiff's decedent by violently assaulting him outside her tavern—the precise sort of thing her nephew did when he got drunk."

If the foregoing statements were supported by evidence before us, I would concur in the reversal of the summary judgment awarded the defendant and the remand of this cause for further proceedings.

I cannot so concur because I fail to find proper support for such contentions.

First, the allegations set forth in plaintiff's petition are as follows:

"Said defendant, Dorothy Tester, was and is aunt of said defendant, Roger Lee Roberts, and she her agents, servants and employees knew *or should have known in the*

*exercise of reasonable care* that said Roger Lee Roberts when intoxicated became violent and abusive and disorderly, and also, became dangerous to the physical and mental welfare of others and said Dorothy Tester, defendant, her agents, employees and servants knew *or had reason to believe* that said defendant, Roger Lee Roberts, had become intoxicated while drinking intoxicating liquor in said Corner Bar and yet said defendant, Dorothy Tester, her agents, employees and servants continued to serve intoxicating liquors to said defendant, Roger Lee Roberts.

"In continuing to serve the defendant, Dorothy Tester, her agents and servants and employees violated Revised Code Section 4301.22 (B) and Ohio Revised Code Section 4301.22 (C) by selling intoxicating liquors to an intoxicated person and by selling said intoxicating liquors to an individual who habitually drinks intoxicating liquor to access [sic]."

I can only construe these allegations of the petition to be an attempt to state a cause of action founded upon negligence and to be insufficient to establish a cause of action founded upon willful and intentional misconduct. Neither, is a claim of willful or intentional misconduct exhibited by an affidavit, deposition, or other document filed by plaintiff in answer to defendant's motion for summary judgment. As stated, the plaintiff made no response to defendant's motion for summary judgment by affidavit or otherwise.

Under existing Ohio law, as declared in *Ramon* v. *Spike* (1951), 92 Ohio App. 49, and *Love* v. *Fountas, supra*, defendant's affidavits afforded a complete defense to the petition. Assuming, as contended in the majority opinion, that there is an exception in cases of willful and intentional misconduct, we do not have such an issue before us either by allegations contained in plaintiffs petition, affidavit, or other evidentiary matter—plaintiff having filed none in response to defendant's motion for summary judgment. It was especially necessary that he do so if he was claiming an exception to the requirement of blacklisting.

At this point we run into some of the difficulties with

which the Supreme Court was confronted in *Robinson* v. *Stilgenbauer* (1968), 14 Ohio St. 2d 165. In that case, the demurrer to the petition had been overruled, but the plaintiff filed affidavits which were insufficient. In the instant case, plaintiff filed no affidavits following the defendant's motion for summary judgment.

Civil Rule 56 (E), with reference to summary judgment, provides, in part:

*"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."* (Emphasis added.)

Contrary to the provisions of Rule 56 (E), plaintiff has sought to rest upon the mere allegations of his petition without, by affidavit or otherwise, setting forth specific facts showing that there is a genuine issue for trial. To hold that he may do so would greatly lessen the effectiveness of summary judgment procedures and, contrary to Rule 56 (E), permit him to rest upon the mere allegations of his pleadings without setting forth specific facts showing that there is a genuine issue for trial. Further, if he is relying upon willful and intentional acts of the defendant which have not been alleged, how can such acts possibly be considered if they are neither alleged in the petition or asserted by affidavit or otherwise in response to the motion for summary judgment.

Without making a determination that there cannot, under some circumstances, be a cause of action against a vendor who sells intoxicants to a known alcoholic not officially designated as such, it is my finding that due to the failure of plaintiff to comply with the provisions of Civil Rule 56(E), no civil liability of defendant Dorothy Tester is demonstrated upon the record presented for the purpose of defendant's motion for summary judgment. Therefore, I would overrule the assigned claim that the common

pleas court erred in sustaining the motion of the defendant for a summary judgment in her favor.

As stated by the trial judge, I too may be of the opinion that there ought to be legislation creating greater liability in this field; however, for the reasons herein stated, I would affirm the summary judgment rendered by the common pleas court in favor of defendant Dorothy Tester, d. b. a. Corner Bar, and remand this cause for further proceedings between the plaintiff and defendant Roger Lee Roberts.